## NATIONAL BANK v. ANDERSON.

1. An innocent indorsee for value of a promissory note before maturity takes free from any defence of the maker against the payee, and is not affected by any admissions made by the payee after its transfer.
2. In trials before a jury incompetent evidence is error, even if admitted "subject to objection."

Before HUDSON, J., York, November, 1888.

This action was commenced in June, 1885. The judge charged the jury as follows:

The plaintiffs, the First National Bank of Rock Island, Ill., bring this action against the defendants, John G. Anderson and Iredell Jones, as copartners, trading under the name of John G. Anderson & Co., to recover the amount due upon a certain note. The note reads as follows: (reads note to jury.) The plaintiff, the bank, alleges that it is the holder and owner of this note for a valuable consideration, purchased before it was due, before maturity. The defendants set up as a defence to this action, the allegation that the plaintiff is not the owner and holder, and in the next place, that if the plaintiff is the owner and holder, it did not become such before the paper was due; or if it became such before the paper was due, it had full notice of all the equities existing betwixt the original parties, to wit, the consideration of the note, and that the consideration had failed. Now, upon these issues the parties went to trial. It devolved upon the plaintiff bank to show affirmatively that it is the owner and holder of the note, and if the other defence set up is to avail the defendants, the plaintiff must furthermore show that it became the purchaser of the note before it was due.

This cause has to be determined by you upon the facts, upon the evidence. The production of this note, together with evidence that the plaintiff became the purchaser—if that evidence is to be believed, and that is for you to say, all the evidence is for you—proves the claim to that extent, and in order to shut out the defences set up here, it is necessary to prove, furthermore, that the plaintiff bank became the owner before the paper was

due. The evidence on the part of the bank by the cashier and the other witnesses who were examined was to the effect that on the 9th of February, 1885, the bank became the owner of this paper in the course of regular business—that it discounted the note. If that be so, and these other assignments were made (and we have the endorsements upon the back of the paper and evidence that the endorsements were made, and no dispute as to the genuineness of the endorsements), that made the bank the owner and holder of the note on the 9th of February, 1885, which was before the paper reached maturity.

The man who buys a negotiable note before that note becomes due is ordinarily safe. If the man from whom he bought it had found it, yet if the purchaser took it for valuable consideration, and without notice of a defect in the title, then he buys with the privilege that he is not subject to the equities that existed betwixt the original parties. If there should be a note given for the purchase money of a horse, payable at a future date, and one of you bought that note for a valuable consideration before it was due, it does not matter how defective was the consideration, how defective the horse was, if the transfer has been made, and it falls into the hands of an innocent purchaser, holder, before maturity, no defence that he had against that note betwixt the original party and himself will hold at all. This is done for the protection of commercial paper. The rule is laid down in the interest of commerce. People must have some protection when they deal in commercial paper, and when it is traded before maturity none of these defects which I have alluded to can be brought in at all. That is in the interest of commerce. If it were not so, commercial paper would be of very little value. Every man who took it would run a risk. He would have to make inquiries about the parties who previously held it, and our banks who deal in commercial paper generally could not do that. Hence the rule was laid down in old England.

So if this bank did buy this paper before it fell due, it does not matter whether the defendants got one dollar value out of the property for which it is given, nevertheless they will have the note to pay, unless the bank knew there was a violation of consideration. The bank must have had notice of these defects, and

it is necessary for the defendants to prove that the bank had notice. The rule is, that one who takes commercial paper before maturity takes it as good paper, and if the parties plead want of consideration, they must prove the fact that the party holding had notice of these defects. The bank in this instance proves by these witnesses that it took the paper for full value, without notice of any defects. If that be so, Anderson & Co. will be obliged to pay it. One question for you is : Is the bank the owner? There is the evidence. You will be controlled by the preponderance of the evidence. Here is evidence of various endorsements. If there is nothing against that testimony, nothing on the other side, you would not be justified in whimsically disregarding that testimony.

Did the bank have notice? If after the testimony on the part of the plaintiff that it did not have notice the defendant expects to bring in his defence of failure of consideration, then they must make it appear by the preponderance of evidence that notice was given. You cannot guess that the bank had notice. Something was said about these parties who owned the note being also connected with the bank. That does not of itself bring notice to the bank. If you come to the conclusion that the bank did not know of these defences, you will give them no consideration at all. If you come to the conclusion that the officers of the bank have testified truthfully, that it bought for a valuable consideration before maturity, and without notice of these defences, your verdict must be for the plaintiff for the full amount of this note. If there be evidence that the bank became the owner of the paper after maturity, then the defences may come in. If there be evidence, in your judgment, that the bank took the paper knowing of the consideration and the defence of failure of consideration, then that defence comes in.

Suppose you let it in—and you must do it upon proof—then let us examine into the matter and see how it stands. The testimony is that the original purchase by the gentlemen in Rock Hill of agricultural implements, to wit, these plows, was sometime in 1883, and there was no note given—just a simple account. Now, as late as the first of July, 1884, that account was closed by this note. If they had sold any of these machines—any

plows—betwixt the time they bought them and July 1st, 1884, and if they knew at the time they gave this note that the people were complaining about these plows; if they knew they would not suit, you see at once that it was a waiver.  If a man buys a piece of property and found that it was defective, and still, with his eyes open, promises to pay, you can't get out of that.  . That is what we call a waiver.  Suppose when the note was given— July 1st, 1884—that these gentlemen didn't know that there was a complaint—that was the middle of the year, after the time when plows are used.  Now, suppose they didn't know it then, but found it out afterward, and still when they found it out wrote letters back asking for time and promising to pay, it is a waiver and an estoppel.  You heard those letters read; that is evidence, that is in testimony.  So, if they knew of the failure of consideration, and nevertheless gave this note; or if when they gave this note they did not know and wrote those letters and promised to pay afterward, they estopped themselves again. But if this note was bought before maturity for valuable consideration without notice, none of these defences will hold.

The bank is bound to recover, unless there was a conspiring against the defendants to get rid of this plea of failure of consideration—used the Rock Island Bank as a cat's paw.  In order to establish that, certain declarations from B. D. Buford, or one of the Bufords, and also another one, are introduced here—some conversation of Mr. Gage, some statement of a letter he had, and the contents of the letter.  Not a single word that Buford said, not a single word that another one said, would bind the bank, if it was done after the bank became the owner of the paper, and unless the party was the actual agent of the bank after it became the owner of the paper.  Buford could not say anything to hold the bank after he had traded the paper, neither could his (Buford's) assignee, for he had traded the paper.  Neither could bind the bank if the bank was an innocent purchaser for a valuable consideration.  You have heard the testimony about this conversation with Mr. Gage, and that it was about a letter that purported to be a letter from Buford.  Mr. Gage says that at that time he was not the agent of the bank for the collection of this

note, so this plaintiff cannot be estopped, except by some actual agent having authority to make such statements.

You will take the record and find a verdict. If you come to the conclusion now from the evidence that the plaintiff is entitled to recover, you will give your verdict for this note, and the interest will run from the first day of July, 1884, at 7 per cent. It simply says with interest, and that means 7 per cent. Therefore you will calculate up to the present time at 7 per cent. If you come to the conclusion, if there is any testimony to justify the conclusion, that the bank is not entitled to recover, that there was a total failure of consideration, and that the plaintiff is open to that defence, your verdict would have to be for the defendants, and discharge them from the note. Here is the note and here is the complaint.

Let me say another thing. The jury once before found a verdict. I do not see it, though written on a piece of white paper on the 10th of November, 1886, and they found a verdict for the defendant. Now, let me tell you, gentlemen, you must not be influenced by that. That verdict was set aside by the Supreme Court upon some error committed by the judge, and you are not to be influenced by that. You don't know what evidence went before that jury; you don't know what instructions the judge gave that jury, and you are not to be governed by that, but from the facts here and the instructions I have given you. If I have erred in the law, my errors will be corrected by the Supreme Court. You will find some blank spot on this white paper to write your verdict, I don't believe there is any room on the summons. If you find for the plaintiff, you must fix the amount. If you find for the defendant, you will simply say, We find for the defendant—if there was an entire failure of consideration. If there was not a total failure of consideration, you will find for the plaintiff. Take the record.

*Mr. G. W. Gage*, for appellant.

*Mr. W. B. Wilson, jr.*, contra.

April 19, 1890. The opinion of the court was delivered by MR. JUSTICE MCGOWAN. This case was once before in this

court (see 28 S. C., 144), where the facts are stated as follows :
"On July 1, 1884, the defendants executed a note for $1,000
to B. D. Buford & Co., of Rock Island, Illinois, for value re-
ceived, payable nine months after date.   This promissory note was
endorsed as follows: (1) B. D. Buford & Co., by J. M. Buford,
assignee; (2) Rock Island Plow Company, P. L. Mitchell, presi-
dent; (3) pay I. M. Ivy & Co., or order, for collection for First
National Bank, Rock Island, Illinois, Geo. M. Loosley, cashier.
The complaint alleged the endorsement of the note by J. M.
Buford, as assignee of B. D. Buford & Co., and the discount of
the same by the plaintiff bank in good faith before maturity, on
February 9, 1885, for value, and the plaintiff's ownership
thereof.   The defendants answered that the consideration of the
note was agricultural implements, which were warranted by B.
D. Buford & Co. to be suitable for the cultivation of corn and
cotton, for which, however, they proved wholly unfit; that before
the commencement of the suit they offered to return the imple-
ments, but the offer was declined, and the defendants were there-
by damaged to the extent of fifteen hundred dollars; and 'that
if the plaintiff ever became the owner and holder of said note, it
became such after notice of the defence and claim of set off; and
that the note had not been transferred to the plaintiff in good
faith.'   *   *   *   One of the defendants was allowed to testify
as to the declarations of John P. Gage, a lawyer, whom it seems
the assignee, J. M. Buford, had employed to collect another note
of the defendants for $500.   It did not appear that Mr. Gage
was the attorney or agent of the bank, or had been employed to
collect the $1,000 note.   This defendant was also allowed to state
that at the time the note was given for agricultural implements
there was a general understanding that such of the implements
as did not give satisfaction to the farmers should be exchanged
for others; that they did not prove satisfactory, but B. D. Buford
& Co. refused to take them back or exchange them," &c.   Under
the charge of the judge the jury found a verdict for "the defen-
dant"; but this court set aside the verdict and ordered a new
trial for several reasons, and, among them, upon the ground that
"a negotiable instrument in the hands of a *bona fide* endorsee
before due is presumed to have been given for valuable consider-

ation ; and possession is ordinarily *prima facie* evidence that the endorsee received it in good faith for value before maturity," &c.

Accordingly the case went back, and upon the second trial the plaintiff introduced the same evidence as in the first. James M. Buford and George M. Loosley, residents of Rock Island, Illinois, testified by commission as follows : The first that he made the endorsement on the note in blank himself as the assignee of B. D. Buford & Co., and produced the deed of assignment to himself. The latter testified that he was the cashier of the plaintiff corporation on and before February 9, 1885, and that on that day the plaintiff corporation discounted the note at their banking house for value in the usual course of business, and that the plaintiff corporation had no notice whatever of any defence or off-set to the note. There was also evidence tending to show that the purchase of the agricultural implements was sometime in the year 1883 ; that the account was not closed by note until July 1, 1884, which was not due until nine months thereafter (April, 1885), and that up to within a few days of that time (March 13, 1885), the defendants, in asking for indulgence, wrote that the note is drawing interest, and you will not lose a single cent of it," &c.

Upon the charge of the judge (which should appear in the report of the case), the jury again found for the defendants. The plaintiff bank moved for a new trial, which the Circuit Judge, on November 9, 1888, granted. But soon after he requested a reargument of the motion for a new trial, and on November 13 he passed the following order : "After granting the foregoing order, I reflected upon its propriety, and being not entirely satisfied that I did right in setting aside this second verdict of the jury in favor of the defendants, I requested reargument of the matter. After this reargument I am of opinion that the above order should be rescinded. There was evidence tending to sustain the defence, which the jury weighed in favor of the defendants, all issues of fact were fairly submitted, and for a second time they found for the defendants. Very strong circumstances were adduced going to sustain defendant's case and to contradict the plaintiff's testimony. It is ordered, therefore, that the above order be rescinded and a new trial be refused," &c.

The plaintiffs appeal to this court upon the following grounds: "I. Because the judge erred in admitting the testimony of Iredell Jones, John G. Anderson, and Thomas J. Seward, witnesses for the defendants, as to the contents of a letter alleged to have been written by J. M. Buford, assignee of B. D. Buford & Co., to John P. Gage about April 8, 1885, and alleged to have been read or exhibited by Gage to the witnesses about the same time, when there was no evidence going to show that the plaintiff authorized such letter to be written, or had any knowledge thereof, or that either of the Bufords or Gage were the agents of the plaintiff at that time; besides, the presiding judge further erred in admitting testimony of the same witnesses as to the declarations of John P. Gage, made to the defendants about the same time.   2. Because the presiding judge erred in admitting the testimony of several witnesses of the defendants, tending to prove a failure of consideration as between the makers and payees of the note sued on, when there was no evidence to impeach the *bona fides* of the plaintiff or its title.   3. Because the presiding judge erred in undertaking, on November 13, 1888, to rescind an order made by him on November 9, and duly entered in the minutes of the court, setting aside the verdict herein and granting a new trial, especially where counsel for plaintiff was not present in court, having understood the presiding judge to refuse to disturb his order of November 9th.   4. Because the presiding judge erred in not granting a new trial, for the reason that incompetent testimony had been admitted, and for the further reason, that the verdict of the jury was unsupported by any evidence," &c.

Without going into the question as to whether the Circuit Judge had the right to rescind his own order granting a new trial, we think his first impression was right. We have, for the second time, looked carefully through this whole case, and we are unable to see any substantial difference between the defence as made on the second trial and that made on the first. It seems to us, to allow this verdict to stand, would be not only to disregard the rulings upon the former appeal, but to ignore the old well settled principle of commercial law—that if a promissory note, not yet due and fair upon its face, is transferred to a *bona fide* holder for value, without notice of any defence, which may exist between

the original parties, the makers of such note may not, against such holder, set up any defence which tends to alter the terms of the note as to what was the original contract, or to show failure of consideration. This principle of commercial paper is so important that it must be maintained in all its integrity. This note was not due until April 1, 1885. The makers had put it in circulation. ·Was it transferred to the bank on ·January 9, 1885? Such is the direct positive proof, and unless it is entirely fabricated, there is, necessarily, an end of the defence. There is not a *scintilla* of direct proof to the contrary. But it is earnestly urged, that all the circumstances, taken together, show that the bank had notice of the defence now made. It was not made to appear that the defendants ever claimed to have a defence—certainly down to March 13, 1885, when, in asking for indulgence, they wrote that the whole debt was drawing interest, and every cent of it would be paid. If, as testified to clearly and positively, the note, then, had already been transferred to the bank, how could it have notice of that which up to that time had no existence? But, it is suggested, that the note was never really transferred to the bank, as shown by the fact, that James M. Buford, as assignee, after the alleged transfer to the bank, still took an interest in collecting the note, and wrote letters upon the subject. We cannot think this circumstance so strange and unusual as to nullify the endorsements on the note itself, and to overthrow the positive testimony that the bank became the *bona fide* holder of the note on February 9, 1885.

We entirely agree with what the Circuit Judge said in his charge. "The bank is bound to recover, unless there was a conspiring against the defendants, to get rid of this plea of failure of consideration, and the Rock Island Bank was used as a cat's paw. In order to establish that, certain declarations from B. D. Buford, or one of the Bufords, and also another one, are introduced here—some conversation of Mr. Gage, some statement of a letter he had, and the contents of the letter. Not a single word that Buford said, not a single word that another one said, would bind the bank, if it were done after the bank became the owner of the paper, and unless the party were the actual agent of the bank, after it became the owner of the paper. Buford could not say anything to hold

the bank after he had traded the paper, neither could his (Buford's) assignee, for he had traded the paper. Neither could bind the bank, if it was an innocent purchaser for valuable consideration. You have heard the testimony about this conversation with Mr. Gage, and that it was about a letter purporting to be from Buford. Mr. Gage says that at that time he was not the agent of the bank for the collection of this note, so this plaintiff cannot be estopped except by some actual agent, having authority to make such statements," &c.

Under the proof in this case, we cannot think that such notice of the defence now made was so fixed upon the bank, before it discounted the note on February 9, 1885, as to authorize the admission of testimony as to the alleged guaranty, that the agricultural implements would "prove satisfactory," or as to the alleged failure of consideration. This being the case, we think it was error to admit that evidence. Nor can we say that the error was cured by its "admission, subject to objection." That may be done in some cases where the court is to pronounce the judgment. But in a trial by jury, such evidence may have its effect simply by being admitted at all. See *Bonham* v. *Bishop*, 23 S. C., 105.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded for a new trial.