## 18185

DIXIE WOOD PRESERVING COMPANY, Inc., Plaintiff-Respondent, v. ALBERT GERSTEN AND ASSOCIATES *et al.,* Defendants-Respondents. The CITIZENS AND SOUTHERN NATIONAL BANK, Plaintiff-Appellant-Respondent, v. ALBERT GERSTEN AND ASSOCIATES, Screven Lumber Industries, Inc., South Carolina Tax Commission, Dixie Wood Preserving Company, Inc., Appellants, and T. Legare Rodgers, Individually and as Clerk of Court for Beaufort County, Defendants-Respondents.

(135 S. E. (2d) 368)

58

*Messrs. Hagood, Rivers & Young,* of Charleston, and *Levin & Sams,* of Beaufort, *for Plaintiff-Appellant-Respondent,*

*Messrs. Dowling, Dowling, Sanders & Dukes,* of Beaufort, *for Albert Gersten and Associates, Appellant-Respondent,*

*Messrs. D. R. McLeod, Attorney General,* and *James M. Windham, Assistant Attorney General,* of Columbia, *for South Carolina Tax Commission, Defendant-Respondent,*

*Messrs. Dowling, Dowling, Sanders & Dukes,* of Beaufort, *for Defendant-Respondents,* and *Thomas & Thomas,* and *Felix B. Greene, Jr.,* of Beaufort, *for Plaintiff-Respondents,*

*Messrs. Hagood, Rivers & Young,* of Charleston, and *Levin & Sams,* of Beaufort, *for Plaintiff-Appellant-Respondent, in response to appeal brief of Albert Gersten and Associates,*

*Messrs. Thomas & Thomas* and *Felix B. Greene, Jr.,* of Beaufort, *for Plaintiff-Respondent,*

*Messrs. Hagood, Rivers & Young,* of Charleston and *Levin & Sams,* of Beaufort, *for Plaintiff-Appellant-Respondent, in response to appeal brief of Dixie Wood Preserving Company,*

*Messrs. Hagood, Rivers & Young,* of Charleston, and *Levin & Sams,* of Beaufort, *for Plaintiff-Appellant-Respondent, in response to Respondents' brief of Dixie Wood Preserving Company, Inc., Albert Gersten and Associates, et al.,*

*Messrs. Hagood, Rivers & Young,* of Charleston, and *Levin & Sams,* of Beaufort, *for Plaintiff-Appellant-Respondent, in response to Respondent brief of the South Carolina Tax Commission,*

March 17, 1964.

Brailsford, Justice.

The only question arising on this voluminous record which we find it necessary to decide is whether The Citizens and Southern National Bank, Augusta, Georgia, is entitled to recover a money judgment against Albert Gersten and Associates, a foreign corporation.

During 1958 and 1959 Gersten was prime contractor in the construction of large housing projects on land belonging to the United States in Beaufort County, South Carolina. Gersten contracted with Screven Lumber Industries, Inc. to furnish the lumber needed for the construction of these projects, delivered at the work sites, at $85.50 per thousand for untreated lumber, $108.50 per thousand for pressure treated lumber, deliveries to be made as scheduled, terms: Cash 30 days after delivery.

Screven, in turn, contracted with Dixie Wood Preserving Company, Inc., that Dixie would treat with wood preservative such lumber as was required to be treated under the terms of Screven's contract with Gersten, and that Dixie would deliver the treated lumber to Gersten's work sites, receiving for its services and for the material expended the sum of $24.00 per thousand. As an inducement to Dixie to undergo the expense of establishing a plant near the work site, Dixie was given the exclusive right to treat all lumber required to be treated under the Screven-Gersten contract, which was estimated to amount to at least 4,000,000 feet. The construction contract was executed in January, 1958, and the subcontract for lumber was executed in February following.

Purchase orders were issued by Gersten to Screven from time to time ordering an approximate quantity of lumber in millions of feet. Apparently, most of the deliveries involved here were made under an order dated March 21, 1958, for "approximately 3,000,000 board feet," which, in common with other such purchase orders, contained the

following paragraph over the signature of a Gersten representative:

"Vendor requests that all payments on this Purchase Order be made to the Citizens and Southern National Bank, Augusta, Georgia. This request is acknowledged and accepted by us."

On August 18, Screven executed a formal assignment of this purchase order to the Bank.

The contract between Screven and Dixie, which was entered into some six months before the assignment of August 18, provided: "First Party (Screven), by the execution of this agreement, hereby authorizes and directs Gersten to pay all treating fees of the Second Party (Dixie) determined as aforesaid and to deduct the amounts so paid to the Second Party from the amount to be paid to the First Party by Gersten under their contract hereinabove mentioned." However, the practice actually followed was for Screven to bill Gersten for the full contract price for treated lumber and for Screven to make periodic remittances to Dixie.

Screven financed its operation during the thirty day period between delivery and payment by borrowing from the Bank, as deliveries of lumber were made, on notes secured by assigned invoices. Gersten paid the invoices when due by checks to Citizens and Southern National Bank account Screven Lumber Industries, Inc. An officer of the Bank testified that many thousands of dollars were advanced and repaid in this fashion.

During the period of performance under these contracts, Screven had to meet two obligations from remittances for lumber delivered to Gersten, *i. e.,* its notes to the Bank for advances against assigned invoices, and the treatment and delivery fees due Dixie, which were included in the invoice price. Both were in the nature of running accounts on which a balance was always due by Screven. Likewise, a balance was always due it from Gersten. By mid-December, 1958,

the sum of the accounts payable by Screven on the obligations to Dixie and to the Bank exceeded the total of accounts receivable by it from Gersten, even as reflected by the face of unpaid invoices of $35,022.54, which Screven claimed to be due. Gersten disputed this figure, contending that it included duplicate charges and other mistakes and that it (Gersten) was entitled to certain setoffs against Screven arising out of the contract. Consequently, Gersten withheld payment of the invoices. These had been assigned to the Bank as security for nine notes executed by Screven between December 2, 1958, and January 2, 1959, inclusive, in the aggregate amount of $17,859.54 and Gersten had notice of the assignments, which were endorsed on the respective invoices prior to delivery.

In the litigation that developed, Gersten admitted that it owed a balance of $25,420.33 (the correct figure as determined at the trial was $25,642.79) for deliveries of lumber under its contract with Screven. It paid this amount to T. Legare Rodgers, Esq., Clerk of Court for Beaufort County, and prayed that it be exonerated from further liability on account of the claims of other parties, including Dixie and the South Carolina Tax Commission, which had filed a lien against Screven for sales tax and had served a notice of levy upon Gersten.

Screven and Dixie claimed mechanics' liens on the real estate involved and on the fund in the hands of Mr. Rodgers. Dixie also claimed the right to recover judgment against Gersten and its surety on a performance bond, which had been required of Gersten as prime contractor for the housing projects. The South Carolina Tax Commission claimed a lien on the fund under its levy for unpaid sales taxes. The Bank, in a separate action brought by it for judgment against Gersten on the assigned invoices, caused the fund to be attached as the property of Gersten, a foreign corporation.

The two actions were consolidated for trial and referred to William N. Levin, Esq., a respected member of the Beaufort Bar. He filed an able and comprehensive report

in which he found that the balance due by Gersten to Screven was $25,642.79, and that the balance due by Screven to Dixie, for which Gersten was secondarily liable, exceeded this amount by several thousands of dollars (apparently including an allowance of interest to Dixie, as to which no question is raised). Gersten was required to pay the full amount found to be due Dixie and was exonerated from liability to Screven, the Bank or the Tax Commission. The circuit court adopted the findings of fact, conclusions of law and recommendations of the report, with minor modifications which require no comment. The Bank alone has appealed, contending that the court erred in denying it a money judgment against Gersten and in its rulings on the validity and priority of liens on the real estate involved in the construction and on the fund in the hands of Mr. Rodgers, which the Bank claims under its attachment.

We think it clear that Screven could not have recovered against Gersten and left Dixie unpaid. Screven's liability to Dixie was primary and that of Gersten was secondary. Payment to Dixie by Gersten would be, *pro tanto,* a complete defense to an action by Screven. Gersten has been required to pay Dixie more than the balance found to be due Screven. The appeal turns on whether this defense is available against the Bank as Screven's assignee. We are persuaded that it is.

The general rule is that the assignee of a non-negotiable chose in action takes it subject to all equities and defenses which could have been set up against the assignor at the time of the assignment. *Patten v. Mutual Benefit Life Insurance Company,* 192 S. C. 189, 6 S. E. (2d) 26, 126 A. L. R. 91, from which we quote:

" * * * An assignee of a non-negotiable chose in action ordinarily, however, acquires no greater right than was possessed by his assignor, but simply stands in the shoes of the latter. He normally takes subject to all equities and defenses which could have been set up against the chose in the hands of the assignor at the time of the assignment.

\* \* \* The rule that the assignee of a non-negotiable instrument takes it subject to equities applies to contracts generally." 6 S. E. (2d) 30.

The Bank, in effect, adopts the foregoing statement of the rule and, as we understand, contends that this case falls within the exception, *i. e.,* that an equity or defense coming into existence after notice of the assignment may not be asserted against the assignee. Quoting from the brief:

"At the time the assignments were made by Screven to the Bank and at the time the Bank gave Gersten notice of the assignments there were no equities or defenses which Gersten could have set up against Screven with respect to the subject matter of the assignment. If Gersten had chosen to do so Gersten could have stipulated that Screven's right to payment would be subject to any rights which might be exercised by unpaid laborers or materialmen, but Gersten did not make any such stipulation prior to Gersten's acknowledgment that the assignments had been made, and by the failure to do so has lost any right it may have had to use claims of unpaid laborers and materialmen as set-offs against its obligation under the assignments."

Counsel also attach significance to the fact that when the invoices sued upon were issued, Dixie had, at most, "an inchoate right to a lien \* \* \*," which "did not constitute an equity in favor of Dixie existing at the time the assignments were made."

We think that Gersten's equity arose out of its secondary liability for Screven's· debt to Dixie. Being obligated to see Dixie paid, Gersten had an equity to require the satisfaction of this obligation from the balance due by it to Screven. This right arose by operation of law, quite independently of any contractual stipulation.

Dixie's claim and Gersten's equity existed when the invoices sued upon were issued and assigned. The invoice dates are not in the record, but the attached

notes were all dated between December 2, 1958, and December 16, 1958, except for one dated January 2, 1959. On December 2, Dixie's claim amounted to $24,645.77, on December 16, to $20,702.00 (low point during period); and on January 2, 1959 to $24,923.49. The balance was never less than $24,642.10 between January 2 and the commencement of the action. On any settlement day during this period, Gersten had the right to insist that any balance owed by it to Screven be first applied to payment of the amount due Dixie. Since this right existed at the time of the assignments, the circuit court properly held that it was available as a defense against the assignee. 4 Am. Jur., Assignments, Section 95, 6 C. J. S., Assignments, § 99.

The same result is required by the quoted provision of the contract between Dixie and Screven, which antedated the assignments, and under which Dixie had the right to receive payment from Gersten, which, in turn, was authorized to deduct the amount paid to Dixie from any balance due Screven for lumber delivered under the contract.

The Bank's proceedings in attachment were strictly ancillary to its action for a money judgment and fall with the denial of that relief. Therefore, the issues tendered by the Bank with respect to liens have become moot. Dixie filed certain exceptions to a preliminary order refusing to dissolve the Bank's attachment and consolidating for trial the action brought by it with the action brought by the Bank. Gersten filed certain exceptions to a supplemental order of the circuit court which was issued after the report of the special referee was affirmed. All of these exceptions have become moot. Counsel for Gertsen so stipulated in oral argument and in the brief. Dixie has been awarded complete relief.

Affirmed.

TAYLOR, C. J., MOSS and LEWIS, JJ., and J. A. SPRUILL, JR., Acting Associate Justice, concur.