### 0684

Mary Jane ROSEMOND and James Rosemond, Appellants v. Marion CAMPBELL, d/b/a Quality Construction Company and Marion Harris, d/b/a Pickensville Finance Company, Defendants, of whom Marion Harris, d/b/a Pickensville Finance Company is Respondent.

Appeal of Marion HARRIS, d/b/a Pickensville Finance Company.

(343 S.E. (2d) 641)

·Court of Appeals

518

*David D. Armstrong,* Greenville, *for appellants.*

*Cecil H. Nelson, Jr.,* of *Wilkins, Wilkins & Nelson,* Greenville, *for respondent.*

*Steven W. Hamm, Philip S. Porter,* and *J. M. Edouard Mille,* of the *South Carolina Dept. of Consumer Affairs,* Columbia, *amicus curiae.*

Heard Jan. 22, 1986.

Decided April 21, 1986.

BELL, Judge:

This is an action by homeowners against a building con-

tractor and a finance company arising from a contract for home improvements. The complaint alleges three causes of action: (1) common law fraud; (2) violation of the South Carolina Unfair Trade Practices Act;[1] and (3) derivative liability of the finance company under the South Carolina Consumer Protection Code.[2] The case was tried before a jury. At the close of the homeowner's evidence, the trial judge granted the finance company's motion for a nonsuit with prejudice as to all causes of action. The case proceeded against the contractor and was submitted to the jury on the first and second causes of action. The jury returned a verdict for actual and punitive damages against the contractor. The homeowners appeal the granting of a nonsuit to the finance company. We reverse and remand.

The homeowners, James and Mary Jane Rosemond, own a house at 22 Owens Street in the City of Greenville. They are persons of limited education. Mrs. Rosemond is illiterate.

In April 1979, Marion Campbell, a building contractor doing business as Quality Construction Company, came to the Rosemonds' residence and solicited them to enter a contract for repairs and improvements to their house. Campbell orally agreed to install new roofing, storm windows on all windows, a storm door, and screening on the porch. He also agreed to furnish a suite of living room furniture. The contract price for these goods and services was $3,236.69.

The day after the solicitation and oral agreement, Campbell returned to the Rosemonds' house and drove them in his truck to the office of Marion Harris in Pickens. Harris operates a finance company under the name of Pickensville Investment Company. Prior to the transaction with the Rosemonds, he had financed more than a thousand construction or home improvement jobs by Campbell over a period of twenty to twenty-five years. At Harris's office, the Rosemonds executed a second mortgage on their house to Campbell to secure payment of the contract price and a standard form, nonnegotiable promissory note, disclosure statement,

---

[1] Section 39-5-10 *et seq.*, Code of Laws of South Carolina, 1976, as amended.
[2] Section 37-1-101 *et seq.* Code of Laws of South Carolina, 1976, as amended.

and security agreement with Harris, evidencing an installment loan of $3,236.69 at 19.66 per cent annual interest to be repaid in forty-eight monthly installments of $104.00 each. Among other things, the note contained the following notice:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

After these documents were executed, Campbell immediately assigned the mortgage to Harris, who paid the loan proceeds directly to him.

According to the Rosemond's evidence at trial, the work Campbell contracted to do was either done defectively or, in some instances, not done at all. After attempting unsuccessfully for four years to persuade either Campbell or Harris to complete the work and remedy the defects, the Rosemonds commenced this action. The jury found Campbell fraudulently induced the Rosemonds to enter the contract and awarded actual and punitive damages.

Campbell has not appealed the judgment against him. Our opinion therefore proceeds on the premise that the Rosemonds established a valid claim for fraud against Campbell.

## I.

The Rosemonds maintain they also proved actionable fraud against Harris. For this reason, they contend, the trial judge erroneously granted Harris's motion for a nonsuit on the first cause of action. A careful review of the record convinces us that the nonsuit on the first cause of action was properly granted.

In order to establish fraud on the part of Harris, the Rosemonds were required to prove, among other elements of the tort, that Harris made a false representation of a material fact, knowing of its falsity, with the purpose or expectation of having them rely on its truth. *See Moye v. Wilson Motors, Inc.*, 254 S. C. 471, 176 S. E. (2d) 147 (1970). There is

no evidence in the record that Harris made any representations whatsoever to the Rosemonds concerning the work to be performed by Campbell on their house. Thus, they failed to offer proof of an essential element of their first cause of action against Harris.

At oral argument, counsel for the Rosemonds virtually conceded this point. However, he argued that Harris is a principal in Campbell's construction business and, therefore, any false representations made by Campbell should be imputed to Harris. In effect, the Rosemonds contend Campbell was the agent of Harris when he induced them to enter the contract.

A party asserting agency as a basis of liability must prove the existence of the agency. *Paramount Fund, Inc. v. Cusaac*, 282 S. C. 497, 319 S. E. (2d) 354 (Ct. App. 1984). In this case, the evidence falls far short of establishing that Harris was a principal to the contract. There is no evidence that Harris has a proprietary or other interest in Campbell's construction company. Although he did a continuous business with Campbell over many years, there is nothing in the record to indicate anything but an arm's length relationship between two separate and distinct enterprises. Campbell's company is only one of several for whom Harris provides financing on a regular basis. The Rosemonds adduced no evidence to show Campbell was acting at the direction or in the interest of Harris when he solicited the contract. They argue that Harris's status as a principal to the transaction is shown by the fact that all the documents were executed in his office. It is not uncommon, however, for a bank or other lender to prepare the documents in connection with a financing of this sort. The contract itself was filled out by Campbell, using a standard printed form of Quality Construction Company. In short, there is no evidence from which a reasonable inference of agency can be drawn. Accordingly, the trial judge ruled correctly when he granted Harris's motion for a nonsuit on the first cause of action.

## II.

The Rosemonds' third cause of action sought to impose liability on Harris, as assignee of their contract with Camp-

bell, pursuant to Section 37-2-404, Code of Laws of South Carolina, 1976, as amended. That section provides, in pertinent part:

> (1) With respect to a consumer credit sale ..., an assignee of the rights of the seller ... is subject to all claims and defenses of the consumer against the seller ... arising from the sale ... of property or services, notwithstanding that the assignee is a holder in due course of a negotiable instrument issued in violation of the provisions prohibiting certain negotiable instruments (§ 37-2-403).
>
> (2) A claim or defense of a consumer specified in a subsection (1) may be asserted against the assignee under this section only if the consumer has made a good faith attempt to obtain satisfaction from the seller ... with respect to the claim or defense and then only to the extent of the amount owing to the assignee with respect to the sale ... as to which the claim or defense arose at the time the assignee has written notice of the claim or defense.

The circuit court was of the opinion that this statute merely abolishes the "holder in due course" doctrine with respect to consumer credit sales. It held the statute gives the consumer a right to assert any defense or setoff he has against the seller if the seller's assignee attempts to enforce the debt, but it does not give the consumer a right to sue the assignee on a claim against the seller. In other words, the court concluded the consumer may use the statute as a shield, but not as a sword against the assignee.

Based on this reasoning, the court granted Harris's motion for a nonsuit on the third cause of action, because the Rosemonds were asserting their claim of fraud by Campbell offensively rather than defensively against Harris.

The question presented for our decision is whether the Rosemonds are entitled to assert an affirmative claim againt Harris for Campbell's fraud or whether the statute limits them to defensive assertion of the claim.

At common law, an assignee's rights can be no greater than those of his assignor. *Dixie Wood Preserving Co. v. Albert Gersten & Associates,* 244 S. C.

57, 135 S. E. (2d) 368 (1964). Consequently, the assignee of a debt takes the obligation subject to all claims and defenses the obligor may have against the assignor. *Id.* However, absent an agreement to the contrary, the common law assignee takes only the benefits, not the burdens of the assigned obligation. *Koppers Company v. Kaiser Aluminum and Chemical Corp.* 9 N. C. App. 118, 175 S. E. (2d) 761 (1970). Thus, as against the assignee, the obligor can only assert a claim defensively when the assignee seeks to enforce the obligation; he has no common law right to sue the assignee affirmatively on a claim against the assignor arising from the underlying obligation. *Langel v. Betz,* 250 N. Y. 159, 164 N. E. 890 (1928); *Pargman v. Maguth,* 2 N. J. Super. 33, 64 A. (2d) 456 (1949).

The common law rule that an assignee has no greater rights than his assignor is subject to an important exception in the case of a negotiable instrument. A person taking a negotiable instrument as a "holder in due course"[3] takes it free from all claims to it on the part of any person and free from all "personal" defenses of any party to the instrument with whom the holder has not dealt. *Eldon's Super Fresh Stores, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 296 Minn. 130, 207 N. W. (2d) 282 (1973); *First National Bank of Andrews v. Jones,* 635 S. W. (2d) 950 (Tex. App. 1982). Personal defenses include the defenses of fraud in the inducement and failure of consideration. *See Park v. Funderburk,* 87 S. C. 76, 68 S. E. 963 (1910); *First National Bank of Rock Island v. Anderson,* 32 S. C. 538, 11 S. E. 379 (1890).[4] When a nonnegotiable instrument is involved, the same result may be obtained by a "waiver of defenses" clause: i.e., an agreement by the buyer not to assert against

---

[3] A "holder in due course" is a person who is a holder of a negotiable instrument, who took it for value, in good faith, without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. *Bank of Fort Mill v. Rollins,* 217 S. C. 464,, 61 S. E. (2d) 41 (1950); *First National Bank of Rock Island v. Anderson,* 32 S. C. 538, 11 S. E. 379 (1890); Section 36-3-302, Code of Laws of South Carolina, 1976.

[4] Harris cannot claim "holder in due course" status on the facts of this case. The note was given in a direct transaction between him and the Rosemonds, his finance company is the named payee on the note, and the note itself contains a conditional promise to pay, making it nonnegotiable. Each of these factors precludes application of the holder in due course doctrine, quite apart from the provisions of Section 37-2-404.

an assignee any claim or defense which he may have against the seller. *See Georgia Railroad Bank & Trust Company v. Doolittle,* 272 S. C. 249, 252 S. E. (2d) 556 (1979); Section 36-9-206, Code of Laws of South Carolina, 1976.

The Consumer Protection Act alters these rules with respect to consumer credit sales. Section 37-2-403 prohibits a creditor from taking a negotiable instrument, other than a check, from the consumer. Sections 37-2-404(5) and 37-3-410(4) prohibit a "waiver of defenses" clause in consumer credit sales agreements and consumer loan agreements. Section 37-2-404 subjects an assignee of the seller's rights to all claims and defenses of the consumer against the seller, even though the assignee is a holder in due course or the consumer has purported to waive his claims and defenses as against the assignee.

As originally enacted by the General Assembly, Section 37-2-404 permitted the consumer to subject an assignee to claims and defenses available against the seller only as a matter of defense in an action by the assignee. *See* Section 2.404, Act No. 1241, Acts and Joint Resolutions of the General Assembly of South Carolina Regular Session, 1974, 58 Stat. at Large 2879, 2913. ("Rights of the buyer ... under this section can only be asserted as a matter of defense to or set-off against a claim by the assignee.") There was no affirmative right to sue the assignee on claims against the seller. Thus, the assignee was in the same position under the statute as he was under the general common law rule.

In 1976, the General Assembly amended Section 37-2-404 by deleting the language which limits the consumer to defensive assertion of claims against the seller's assignee. *See* Section 17, Act No. 686, Acts and Joint Resolutions of the General Assembly of South Carolina, Regular Session, 1976, 59 Stat. at Large 1792, 1823. As amended, the statute subjects the seller's assignee to all claims of the consumer against the seller arising from the underlying credit sale. *Id.* In effect, the amendment enlarges the consumer's rights. It permits him to assert any claim available against the seller offensively in a suit against the assignee as well as defensively as an offset or counterclaim in a suit by the assignee to enforce the obligation. *See* 1 H. Haynsworth, CONSUMER LAW AND PRACTICE IN

SOUTH CAROLINA, at 7-10, n. 23 (1984). The assignee's liability under the statute is derivative: unless the consumer has a valid claim against the seller, he has no claim against the assignee. Moreover, when the consumer asserts such a claim offensively against the assignee, the statute limits his recovery to the amount due on the obligation at the time the assignee has written notice of the claim. Section 37-2-404(2), Code of Laws of South Carolina, 1976, as amended. Any damages in excess of those recoverable against the assignee can, of course, be recovered from the seller, since he is liable on the underlying contract of sale. *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F. (2d) 918 (2d Cir. 1977); *Smith v. Wrehe*, 199 Neb. 753, 261 N. W. (2d) 620 (1978).

In view of the 1976 amendment to Section 37-2-404, the circuit court erred in granting Harris a nonsuit on the Rosemonds' third cause of action. Under the amended statute, the Rosemonds were entitled to assert an affirmative claim against Harris for Campbell's alleged fraud. If the Rosemonds presented sufficient evidence to send the question of Campbell's fraud to the jury, they were also entitled to have the jury consider Harris's derivative liability under the statute. Accordingly, we reverse the granting of the nonsuit on the third cause of action and remand the case for a new trial as to Harris.

Reversed and remanded.

SANDERS, C. J., and GARDNER, J., concur.