998 F.2d 1008
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Michael R. BENNETT; John H. Hofford, d/b/a Chicco
Associates; The Kaiser Company; Ursula S. Kaiser,
Individually and as Personal Representative and Trustee of
the Estate of Natalie C. Pfaehler; Robert L. Kaiser,
Individually, Plaintiffs-Appellants,
v.
THE HOME INSURANCE COMPANY, Defendant-Appellee.
 No. 92-2147.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 1, 1993.
Decided: July 2, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. Robert S. Carr, Magistrate Judge. (CA-91-1877-2-8)
 Argued: Claron A. Robertson, III, Robertson & Sinkler, Charleston, South Carolina, for Appellants.
 Clayton Henson Farnham, Drew, Eckl & Farnham, Atlanta, Georgia, for Appellee.
 On Brief: Therese Trouche Smythe, Robertson & Sinkler, Charleston, South Carolina, for Appellants.
 Brad J. Waring, Stephen P. Groves, Young, Clement, Rivers & Tisdale, Charleston, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before RUSSELL and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Michael R. Bennett and John H. Hofford, d/b/a Chicco Associates ("Chicco"), and others,[1] appeal the jury verdict in favor of the appellee, Home Insurance Company of Illinois ("Home Insurance"), on their policy claim for additional property damages allegedly inflicted by Hurricane Hugo in 1989. We affirm.
 
 
 2
 Ursula S. Kaiser and Robert L. Kaiser owned six apartment buildings in Charleston, South Carolina. The buildings had been vacant since 1986 and had suffered considerable damages from neglect and removal of many fixtures. Trial evidence showed that there was prestorm rot to the studs and wood structure "from water infiltration that had been accumulating, most likely over the years," holes in the wall, and buckled floors. Other evidence disclosed that a previous owner had stripped the properties of many of the fixtures, toilets, sinks, kitchen appliances, and cabinets. Despite the depreciated condition of the six buildings, they remained valuable. Home Insurance had insured the property for $3,550,000.
 
 
 3
 Hurricane Hugo hit Charleston, South Carolina on September 21, 1989. Afterwards, Home Insurance appraised the damages to the Kaisers' property. Although there was conflicting trial testimony, Home Insurance's evidence showed that during the appraisal process, it offered the Kaisers a $100,000 advance for the purpose of repairing the damaged buildings to prevent further water and weather destruction. The Kaisers declined and without explanation, returned the $100,000 advance payment. Home Insurance's appraiser later computed the total loss at $1,654,967.[2] Home Insurance sent to the Kaisers a completed Proof of Loss statement, which declared that "the Whole Loss and Damage" equaled this amount, and asked the Kaisers to sign and to return it. Ursula Kaiser executed it as a sworn statement on behalf of Kaiser Company, and her attorney, after signing as a notary public, acknowledged it. The Kaisers then filed it with Home Insurance. Upon receipt of the signed statement, Home Insurance issued a check to the Kaisers for $1,642,844.[3] The Kaisers accepted it without comment and deposited the check in their account.
 
 
 4
 The Kaisers received the insurance proceeds in early April 1990, and in June 1990, they sold the property to its present owner, Chicco. As part of the sale, the Kaisers also assigned any rights they had to insurance proceeds to Chicco.[4] Shortly after the purchase, Chicco employed an independent company to reappraise the hurricane damages. After that appraiser reported that Home Insurance had underestimated the storm damages, Chicco submitted a claim of over $1,000,000 in supplemental damages to Home Insurance. When Home Insurance refused to pay this amount, Chicco[5] brought an action in South Carolina state court, alleging a breach of the insurance contract. Home Insurance removed the action to federal district court.
 
 
 5
 Chicco later filed an amended complaint adding a claim for breach of the implied covenant of good faith and fair dealing. To remedy Home Insurance's violations under the contract, Chicco sought a declaratory judgment as to its coverage under the insurance policy, actual damages, and punitive damages.
 
 
 6
 The matter was tried before a jury. Before the jury retired, the court instructed it on the general elements of actual damages, accord and satisfaction, and mitigation. As to the latter it charged: "that recovery cannot be had for losses from a breach of contract which the person claiming damage might have prevented by reasonable efforts and expenditure." After less than an hour of deliberation, the jury returned a general verdict in favor of Home Insurance. The district court later denied Chicco's motion for a new trial.
 
 
 7
 On appeal, Chicco raises two issues. First, it argues that the district court erred in submitting Home Insurance's defense of accord and satisfaction to the jury. It further argues that the jury verdict was against the clear weight of the evidence. Home Insurance, however, contends that there was sufficient evidence to sustain a verdict on any one of its defenses because: (1) the payment of $1,654,967 equaled the full value of the Kaisers' storm damages; (2) the Kaisers' deliberate refusal to mitigate the damages caused any damages beyond that amount; and (3) the payment and receipt of the insurance proceeds constituted accord and satisfaction. Since there is more than adequate evidence on any one of these defenses, it also urges that the "two issue rule" requires an affirmance. We agree.
 
 
 8
 After careful consideration of the record, we are convinced that the trial court properly submitted to the jury the issue of accord and satisfaction and that sufficient evidence exists to sustain the jury's verdict. In the seminal case of Redmond v. Strange, 26 S.E.2d 15, 19 (S.C. 1943), the Supreme Court of South Carolina defined accord and satisfaction as an agreement to accept a discharge of an obligation and payment in consideration of this new agreement. Accord and satisfaction, as with any contract, requires a meeting of the minds. Id. at 18; see Fanning v. Hicks, 327 S.E.2d 342, 343 (S.C. 1985). Indeed, the controlling factor is the intention of the parties, which must be determined from all the circumstances surrounding the transaction. Redmond, 26 S.E.2d at 19.
 
 
 9
 The record demonstrates that the Kaisers returned a verified statement that the sum of $1,654,967 represented payment for their total storm loss. This sworn statement was acknowledged before their attorney, a notary public. Of course, the sum submitted by the Kaisers on the Proof of Loss statement was calculated by Home Insurance's appraiser, but there is no evidence that the Kaisers asked for a modification, questioned it, or disagreed with the appraiser's conclusions. Moreover, the Kaisers failed to exercise their rights under section 20 of their insurance contract to demand another appraisal by a disinterested appraiser if they disagreed with Home Insurance's estimate. Trial testimony also shows that even though the check was sent without an accompanying or printed demand of the relinquishment of rights, Robert Kaiser never objected to the check and cashed it with the knowledge that the transaction was completed.[6] Cf. Mercury Marine Div. of Brunswick Corp. v. Costas, 342 S.E.2d 632, 633-34 (S.C. Ct. App. 1986) (no accord and satisfaction when upon receipt of a check, the defendant informed the plaintiff that the check did not fulfill his obligations). Nor was there any evidence presented that the Kaisers submitted the statement or deposited the check under confusion or coercion. Rather, the circumstances surrounding the issuance of the check were sufficient evidence to prove that the parties intended the check to extinguish all of the Kaisers' claims to further storm-related damages. See Fanning, 327 S.E.2d at 343 (record must contain evidence of agreement to settle the dispute); cf. Redmond, 26 S.E.2d at 19-20 (no accord and satisfaction where the only evidence was a statement on the check that endorsement constituted payment in full). Since "an assignee's rights are not greater then those of [its] assignor,"[7] Chicco's action against Home Insurance fails. Rosemond v. Campbell, 343 S.E.2d 641, 645 (S.C. Ct. App. 1986) (citing Dixie Wood Preserving Co. v. Albert Gersten & Assocs., 135 S.E.2d 368, 371 (S.C. 1964)).
 
 
 10
 It is true that the Home Insurance adjuster, John J. Healy, testified that even after the payment of $1,642,844, Home Insurance would have allowed supplemental claims for storm-related damages later coming to its attention. From the evidence, however, it is obvious that Chicco intended to reopen the Kaisers' claim after an accord and satisfaction. Bolstering this conclusion is the essentially uncontroverted evidence that the check accurately represented the full amount of Hugo's damage after eliminating the damage caused by the Kaisers' failure to protect their property. Home Insurance's appraiser testified that he took into account the pre-Hugo neglect and stripping of the property in calculating the actual storm damages. He also testified that although it was difficult to separate the storm damages from some of the damages caused by the post-Hugo neglect, he allowed those damages that could not be separated, but disallowed those damages obviously caused by the Kaisers' failure to protect their property from post-storm weather conditions.
 
 
 11
 As to Home Insurance's mitigation defense, other evidence showed that Hugo damaged the roof on some of the Kaisers' buildings, allowing water, wind, and nature's other forces to intrude. The Kaisers, however, refused Home Insurance's advance for temporary repairs to prevent further damage, and they allowed the property to deteriorate for over seven months before making repairs. Their failure to mitigate damages bars relief for any supplemental damage loss. Cf. Noble v. Corporation Insular De Seguros, 738 F.2d 51, 54 (1st Cir. 1984) (in his action to recover on an insurance policy, a sailboat owner could not fail to mitigate damages by not repairing the boat when he could not afford to finance the repair).
 
 
 12
 In sum, there was sufficient evidence to support the submission of the issue of accord and satisfaction to the jury and the verdict on this issue. Even absent that, the evidence of diminution of value attributable to the Kaisers was sufficient to support a verdict under either of the other defenses to require us to affirm under the"two issue rule."[8]
 
 
 13
 Without doubt, there was overwhelming record evidence on any one of the three issues to sustain the jury's verdict.
 
 
 14
 In view of the above, the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 The other appellants include Ursula S. Kaiser, as trustee for the estate of Natalie C. Pfaehler, Ursula Kaiser, individually, Robert C. Kaiser, individually, and the Kaiser Company
 
 
 [2]
 The policy provided that the recoverable damages were to be computed on a depreciative value basis rather than on replacement cost basis. The policy also had a $5,000 deductible
 
 
 [3]
 After the hurricane, Home Insurance paid an additional $8,800 directly to an environmental contractor for required asbestos removal on these properties. The Kaisers viewed this payment as separate from their hurricane loss
 
 
 [4]
 There is no issue concerning the validity of the assignment
 
 
 [5]
 Chicco filed the action in state court with the same parties as on appeal. For the sake of simplicity, we will refer to all of the appellants as Chicco
 
 
 [6]
 Although the check was for $7,123 less than the amount listed on the Proof of Loss statement, Robert Kaiser admitted at trial that when he received the check, he did not object to the amount
 
 
 [7]
 The exception to this rule, of course, is in the case of negotiable instruments. Rosemond v. Campbell, 343 S.E.2d 641, 645 (S.C. Ct. App. 1986)
 
 
 [8]
 It is unclear under Erie R. Co. v. Tompkins, 304 U.S. 64, 73 (1937) and Byrd v. Blue Ridge Rural Elec. Coop., 356 U.S. 365, 962-63 (1958) whether we should apply the state or the federal standard in reviewing challenges to general verdicts as to the insufficiency of the evidence on one or more issues. In any event, the application of either law would not change the outcome in this diversity case. Under South Carolina law, where a jury returns a general verdict involving two or more issues, its verdict will be upheld if it is supported by at least one of the issues. Anderson v. West, 241 S.E.2d 551, 553-54 (S.C. 1978). That rule applies even if there is an error in allowing one of the issues to go to the jury. Id. at 554; see Blackburn & Co. v. Dudley, 338 S.E.2d 151, 153 (S.C. 1985); Todd v. South Carolina Farm Bureau Mut. Ins. Co., 336 S.E.2d 472, 473-74 (S.C. 1985). Similarly, the United States Supreme Court has held that even where there is insufficient evidence on one claim, a general verdict remains valid as long as there is sufficient evidence on one of the submitted grounds. Griffin v. United States, 112 S. Ct. 466, 474 (1991); Turner v. United States, 396 U.S. 398, 420 (1970)