## COAKLEY & WILLIAMS CONSTRUCTION, INCORPORATED, Plaintiff–Appellant,

v.

## STRUCTURAL CONCRETE EQUIPMENT, INCORPORATED, Defendant–Appellee.

### No. 91–1214.

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1992.

Decided Aug. 21, 1992.

---

**350**

Diane Orlick Leasure, Fossett & Brugger, Chartered, Seabrook, Md., argued, for plaintiff-appellant.

Terry Lynn Turner, Venable, Baetjer & Howard, Baltimore, Md., argued G. Stewart Webb, Jr., Venable, Baetjer & Howard, Baltimore, Md., for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and CHAPMAN, Senior Circuit Judge.

## OPINION

ERVIN, Chief Judge:

In 1991, Coakley & Williams, Inc. (C & W) sued Structural Concrete Equipment, Inc. (SCE) for fraudulent and negligent inducement involving the construction of a Days Inn in Timonium, Maryland. In 1989, the parties had reached a settlement and released all claims arising out of a previous lawsuit involving the same construction project. Without holding a hearing, the district court found that the parties intended the previous release to bar the fraudulent and negligent inducement claims and granted summary judgment in favor of SCE. C & W appeals, arguing that the district court erred either in not holding a hearing or in granting summary judgment. We affirm.

I

This dispute dates back to 1988 and the construction of a Days Inn. C & W was the general contractor, and SCE contracted to construct the cast-in-place structural concrete work. SCE recommended that C & W subcontract the work to Superior Contractors, Inc., and C & W did. Superior and SCE were closely related, as the same man was president of both companies. C & W dismissed Superior from the job site on May 26, 1988. It is not clear from the record exactly why C & W did so, but it appears that Superior either was not performing the work as required or was not financially sound. After C & W dismissed Superior, SCE sued C & W, claiming that C & W had converted the concrete forms Superior had leased from SCE. C & W counterclaimed for trespass.

On June 12, 1989, C & W wrote a settlement offer to SCE. The C & W settlement offer stated:

> Without prejudice, and to settle all disputes between the parties, Coakley & Williams Construction Co., Inc. will pay Structural Concrete Equipment, Inc. the sum of $47,500.00. The parties would enter into a mutual release reserving only any claims which either Structural or Coakley may have against Superior. An order of dismissal with prejudice would be signed by counsel and filed with the court.

... [F]urther discovery in this case by way of depositions will do little to enhance the likelihood of your client recovering substantial monies. On the other hand, additional discovery may well enhance the likelihood of Coakley demonstrating at trial the relationship now perceived to exist between Superior and Structural.

J.A. at 87–88.

Soon after this offer, on June 23, 1989, the parties reached a settlement agreement and released future claims against each other. The settlement agreement first stated that C & W would pay SCE $52,000. The agreement next provided that C & W and SCE would file a Stipulation of Dismissal with Prejudice. Next was the release provision, which the parties focus on in this appeal:

> STRUCTURAL and COAKLEY, do hereby mutually release ... all claims ... and demands whatsoever, in law or equity, which STRUCTURAL and COAKLEY ever had, now have or hereinafter can, shall, or may have against one another for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to and including the day of the date of this release, [next the parties deleted the words "including, without limitation, all claims"] arising out of the Complaint, First Amended Complaint and Counterclaim filed in the above litigation. PROVIDED, HOWEVER, that the mutual release as stated in this paragraph is not intended to, and shall not, release or impair the specific undertakings agreed to by STRUCTURAL and COAKLEY in this Settlement Agreement; and the release shall not, and is not intended to, release or impair any claim that either STRUCTURAL or COAKLEY ever had, now have, or hereinafter may have against Superior Contractors, Inc.

J.A. at 79–80. Two provisions later, the agreement stated that it was "intended to avoid further litigation." After the parties reached this settlement agreement, the district court entered an order dismissing the case with prejudice.

Two years later, on June 14, 1991, C & W sued SCE for fraudulent and negligent inducement. C & W sought $700,000 in compensatory damages and $250,000 in punitive damages. The basis for this action was SCE's alleged misrepresentations that induced C & W to award the subcontract for concrete formwork to Superior. Requesting a hearing, SCE moved the district court either to dismiss C & W's complaint or grant summary judgment in SCE's favor, raising four alternative grounds for granting the motion: the previous release, the statute of limitations, the compulsory counterclaim rule, and res judicata. The district court decided the motion without a hearing, treated it as a motion for summary judgment, and granted summary judgment in SCE's favor on the basis of the previous release without addressing SCE's other arguments. The district court reasoned:

> Even though the release is worded in terms of matters and causes of action "arising out of the Complaint, First Amended Complaint and Counterclaim filed in the above-captioned litigation," it is this Court's opinion that the intent of the parties in entering into it ..., twice expressed therein as an intent to "avoid further litigation," was to settle all claims the parties had against each other arising out of the Days Inn job, whether they had yet been pleaded or not.
>
> The parties' intent was made manifest in the [settlement offer]....

J.A. at 197. C & W appeals from the district court's entry of summary judgment.

## II

■ The first issue in this case is whether the district court erred in ruling on SCE's motion for summary judgment without holding a hearing. C & W argues that "there is a division of authority as to whether a motion for summary judgment may be granted without affording a hearing. The Fourth Circuit does not appear to have *specifically* ruled on this point...." Appellant's Brief at 25 (emphasis added). While we have not found a Fourth Circuit case that is *identical* to this one, there is

closely analogous precedent in this circuit. *See United States Fidelity and Guaranty Co. v. Lawrenson,* 334 F.2d 464, 466–67 (4th Cir.), *cert. denied,* 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964). In *Lawrenson,* this court considered the same local Maryland district court rule applied here.[1] The court stated:

> The district court interpreted the rule to mean that while motions "will automatically be decided on the memoranda filed unless the court or either side requests a hearing, it is still within the discretion of the court to grant or refuse a request for a hearing." A court is, of course, the best judge of its own rules. But even more importantly, rule 78 of the Federal Rules of Civil Procedure, the source of authority for [the local rule], makes it clear that hearings on motions are to be in the discretion of the district courts....
>
> The wisdom of leaving a hearing to the discretion of the district court is obvious.

*Id.* at 466–67. While *Lawrenson* involved a motion for a new trial, the language in the case (as well as rule 78) is broad and does not exclude any type of motion. Thus, we hold that a district court's decision to grant summary judgment without a hearing should likewise be governed by an abuse of discretion standard.

C & W also argues that the district court abused its discretion here because, at the time of the district court's ruling, discovery was incomplete, and therefore the parties had not developed much of a record. While this argument might have some merit if applied to SCE's three alternative grounds for dismissal of the complaint or summary judgment, the record as to the previous release was complete. Therefore, we hold that the district court did not err in deciding, without holding a hearing, whether previous release barred this action.

■ The second issue is whether the district court erred in granting summary judgment based on the previous release. We review summary judgments *de novo* on appeal, *Higgins v. E.I. Du Pont de Nemours & Co.,* 863 F.2d 1162, 1166–67 (4th Cir.1988), viewing any permissible inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). C & W contends that the release only concerned the specific claims in the first litigation. To support its argument, C & W points to two aspects of the release provision set out above: the deletion of the words "including, without limitation, all claims" and the words "arising out of the Complaint, First Amended Complaint and Counterclaim" (hereinafter, the "pleadings language").

We do not find the deletion significant. As signed, the agreement released "all claims" arising out of the pleadings; before the deletion, the agreement released "all claims ... including, without limitation, all claims" arising out of the pleadings. The words "without limitation" do not appreciably change the meaning of "all claims," because "all claims" itself suggests no limitation. Therefore, the deleted language seems to have been a redundancy. Its deletion, in the context of the broad language that remained, does not support C & W's argument that the parties intended a narrow release.

Next, C & W argues that the pleadings language limited the release to those claims contained in the three pleadings in the first litigation. Because C & W did not claim fraudulent or negligent inducement then, it reasons, the release does not bar this action. We reject C & W's argument for several reasons. First, the words "aris-

---

**1.** The local rule states that "[c]ounsel may (but need not) file a request for hearing. Unless otherwise ordered by the court, however, all motions shall be decided on the memoranda without a hearing." Rule 105(6), U.S.Dist.Ct. for the Dist. of Md. The wording in the rule when *Lawrenson* was decided was slightly different, but if anything that wording made it appear more likely than now that a hearing on motions would be granted. *See Lawrenson,* 334 F.2d at 466 ("All motions, objections and exceptions shall be decided on the memoranda filed with the Clerk unless otherwise ordered by the Court, or unless either side shall in writing request a hearing.").

ing out of" suggests that the parties intended to release more than just the claims *contained* in the pleadings. If the parties had intended a narrow release, they could have used language more limited than "arising out of." Second, because the release was very broadly phrased, it seems that if the parties intended to allow any future claims against each other, they would have done so specifically. *See Glass v. Doctors Hosp.*, 213 Md. 44, 131 A.2d 254, 262 (1957) ("it is scarcely conceivable that an exception to the generality of the release would not have been specifically incorporated"). Third, the only excepted claims were those against Superior, which was not a party to the first litigation. If the pleadings language limited the release as C & W argues, to the claims between C & W and SCE in the first litigation, there would have been no reason to except Superior. Finally, the settlement agreement stated elsewhere that it was "intended to avoid further litigation." Therefore, instead of a limited release, it appears much more likely that the parties intended a broad release as to each other's claims.

At most, viewing the release in the light most favorable to C & W, the pleadings language makes the scope of the release ambiguous, which requires us to look to extrinsic evidence of the parties' intent to resolve that ambiguity. *See Admiral Builders v. South River Landing*, 66 Md. App. 124, 502 A.2d 1096, 1100 (1986).[2] At oral argument, C & W conceded that the only extrinsic evidence of the parties' intent is C & W's settlement offer. The settlement offer, written 11 days before the settlement agreement was signed, makes it clear that the parties intended to release claims such as the one in this case. In the offer, Gerald Katz, counsel for C & W, said that he wanted to "settle all disputes" between C & W and SCE and threatened that, if there was no settlement, C & W might reveal SCE's relationship with Superior at trial. Therefore, C & W's

own settlement offer indicates that C & W intended to release all claims against SCE, including claims involving SCE and Superior. This action, which involves claims that SCE fraudulently and negligently induced C & W to deal with Superior, thus comes within the scope of C & W and SCE's previous release.

▮ C & W tries to avoid the settlement offer in four ways, none of them persuasive. First, C & W states that the offer did not refer to the claims in this case because the claims here involve Superior. However, as shown above, the offer did refer to SCE's involvement with Superior. Second, C & W claims that "further negotiations ensued" after the settlement offer and somehow changed the intent expressed in the offer. If any further negotiations changed the intent expressed in the offer, C & W has not presented any evidence of that change. The only visible difference between the settlement offer and the actual settlement agreement is that C & W paid more in the actual agreement ($52,000) than it had offered to pay ($47,500). Third, C & W claims that the settlement offer referred to the parties settling their dispute "without prejudice," while the parties dismissed their litigation *with* prejudice. That argument ignores the fact that the settlement offer itself proposed that the parties stipulate to a dismissal with prejudice. The earlier use of "without prejudice" could only have referred to admission of liability, because later in the same paragraph C & W proposed that the parties dismiss their litigation "with prejudice." *See* Settlement Offer quoted *supra*. Finally, C & W states that the settlement offer was inadmissible evidence that the district court should not have considered in granting summary judgment. However, settlement offers are only inadmissible when offered to prove liability or damages. *See* Fed.R.Evid. 408. The district court only

---

**2.** The district court looked to the release *and* the settlement offer to determine the parties' intent, without first finding that the release was ambiguous. We note that the district court's approach, while inexplicit, does not appear to be entirely consistent with Maryland's law of contract interpretation. Under Maryland law, the court may use extrinsic evidence (1) to determine, at the outset, if a contract is ambiguous; and (2) to determine, after finding a contract ambiguous, what the parties intended. *See, e.g., Admiral Builders*, 502 A.2d at 1098–1101.

considered the offer as evidence of the parties' intent. Therefore, even if the release in the settlement agreement was ambiguous, extrinsic evidence of the parties' intent resolves the ambiguity in favor of SCE's position that the release bars this action.

Accordingly, the judgment of the district court is hereby

*AFFIRMED.*