**John D. CRAWFORD, et al., Plaintiffs,**

v.

**DEUTSCHE BANK AG,
et al., Defendants.**

**No. CIV.A. 4:01cv28.**

United States District Court,
E.D. Virginia,
Newport News Division.

July 11, 2003.

Richard H. Matthews, Esquire, Douglas E. Kahle, Esquire, Pender & Coward, PC, Virginia Beach, VA, for Plaintiffs.

James E. Farnham, Esquire, Michael R. Shebelskie, Esquire, Rachel E. Bowman, Esquire, Hunton & Williams, Richmond, VA, for Defendants.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on the defendants' motion for sanctions against plaintiffs and their attorneys, pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4c. Defendants also seek attorneys' fees and expenses, pursuant to Federal Rule of Civil Procedure 54(d)(2).[1] For the reasons stated below, defendants' motions are **DENIED**.

### I. Factual and Procedural History

In March of 2001, plaintiffs John and Tina Crawford commenced the instant suit against defendants Deutsche Bank, AG ("Deutsche Bank"), Deutsche Bank Alex. Brown ("Alex.Brown"), and Stanley G. Tobin ("Tobin"). Plaintiffs filed an amended complaint on May 11, 2001, alleging numerous violations of federal and state securities laws and the common law.[2] Defendants' current motions relate to the filing of this amended complaint.

According to the amended complaint, John Crawford had amassed a small fortune in the telecommunications sector, but lacked the financial acumen to adequately manage his fiscal affairs. Crawford subsequently formed a relationship with Alex.

---

1. Defendants claim that a "fair estimate of such fees and expenses is $3,100,000.00." (Defs.' Mot. for Attorneys' Fees and Related Nontaxable Costs Pursuant to Rule 54(d)(2).)

2. Specifically, Count I charged defendants with violations of the Racketeer Influenced and Corrupt Organization Act. Counts II, III, and IV charged defendants with violations of Rule 10b–5. Count V charged defendants with violations based upon "Controlling Party" liability. Count VI charged defendants with violations of the Virginia Securities Act. Count VII charged defendants with breach of contract. Count VIII charged defendants with violations of common law fraud. Count IX charged defendants with gross negligence. Count XI charged defendants with breach of common law fiduciary responsibilities. The Amended Complaint did not contain a Count X.

Brown, opening both a joint account and an individual account, with Tobin as the assigned broker. From 1997 until 2000, plaintiffs alleged Tobin led the plaintiffs down an unadvisable financial path by recommending unsuitable and risky investment activities, including uncovered option transactions, and by not diversifying plaintiffs' holdings. Plaintiffs contended that the defendants' mishandling of their brokerage accounts led to roughly forty million dollars in losses.

On June 4, 2001, defendants filed motions to dismiss all counts. The matter was referred to a United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Virginia. The magistrate issued his Report and Recommendation on October 31, 2001. After receiving objections thereto, District Court Judge Henry C. Morgan entered an order, *sua sponte*, converting defendants' motions into motions for summary judgment and referring the matter back to the magistrate judge. After a hearing on the parties' partial summary judgment motions and cross-motions, the magistrate judge recommended that the defendants' motions for partial summary judgment should be granted in part and denied in part[3] and that the plaintiffs' cross-motions be denied. This court affirmed and adopted that recommendation by Order dated August 30, 2002. On February 12, 2003, the court granted Tobin's motion for judgment on the pleadings with respect to Count IX, on the ground that the economic loss rule barred *any* claim for negligence against Tobin.

The jury trial commenced on February 10, 2003. Over the next three weeks, both parties presented voluminous amounts of evidence, through documents and witnesses. Plaintiffs closed their case on February 21, 2003, whereupon the defendants immediately moved for judgment as a matter of law as to the remaining counts in the amended complaint. The court denied the motion as to Count XI and took the motion under advisement as to the other counts. At the conclusion of the trial, on March 6, 2003, the court dismissed the claim for common law fraud. The jury retired to consider the remaining claims. On March 7, 2003, the jury returned with a verdict entirely in favor of the defendants. The action was therefore dismissed on the merits. Currently pending before the court are the defendants' motions for sanctions, attorneys' fees, and nontaxable expenses pursuant to Federal Rules of Civil Procedure 11 and 54(d)(2) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(c). The matters have been fully briefed by both parties and were further presented to the court during a hearing on the matter on April 30, 2003.

## II. Legal Standards

### A. The Private Securities Litigation Reform Act

In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), in an effort to curb the perceived abuses in securities litigation, and to compensate the victims of such abusive litigation. One provision requires a court, upon final adjudication of any private securities action, to perform a Rule 11 review with respect to "any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u–4(c)(1). The court must make specific factual findings in determining whether all parties and attorneys have complied with the requirements of Rule 11. *Gurary v. Nu–Tech Bio–Med, Inc.*, 303

---

**3.** The court granted defendants' motion for summary judgment with respect to Count One in its entirety, Count VII as to Tobin and Deutsche Bank, and Count XI, but only as to Alex. Brown.

F.3d 212, 215 (2d Cir.2002). If the court determines that a party has substantially violated Rule 11, the court is required to impose sanctions in the form of "an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action," unless the violation is *de minimus* or the sanctions would create undue hardship. 15 U.S.C. § 78u–4(c)(3)(A). The PSLRA does not alter the substantive standards under Rule 11, but instead makes such a review mandatory. *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir.1999).

### B. Rule 11

Rule 11(b) of the Federal Rules of Civil Procedure states that when a party presents a pleading, motion or other paper to the court, that party certifies (1) that "it is not being presented for any improper purpose;" (2) that the "claims, defenses and other legal contentions" therein are non-frivolous; and (3) that the factual contentions are backed by evidentiary support.

The Supreme Court has stated that Rule 11 "imposes on any party who signs a pleading, motion, or other paper ... an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing" and has set the standard as "one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enter., Inc.*, 498 U.S. 533, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *see also McGahren v. First Citizens Bank & Trust Co.*, 111 F.3d 1159, 1171 (4th Cir.1997) (finding the appropriate standard in evaluating the conduct of a signatory to be "an objective standard of reasonableness"). A complaint that is wholly unsupported by *any* information vi-olates the investigation required by Rule 11 before filing a complaint. *In re Kunstler,* 914 F.2d 505, 514 (4th Cir.1990). In evaluating the reasonableness of the investigation, however, a district court must remember that such sanctions are to be imposed sparingly, as they can affect the reputation and creativity of counsel. *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991) (citing Fed.R.Civ.P. 11, advisory committee's notes on 1983 amendment).

### C. Rule 54

Rule 54(d)(2) authorizes a court to award attorneys' fees and expenses to the prevailing party as part of a final judgment decree. Fed.R.Civ.P. 54(d). Rule 54(d)(2) creates a procedure but not a right to recover attorneys' fees. *MRO Communs., Inc. v. AT & T Co.*, 197 F.3d 1276, 1280 (9th Cir.1999) (citing Fed.R.Civ.P. 54(d)(2) advisory committee's notes). In *Abrams v. Lightolier Inc.*, the Third Circuit noted that Rule 54(d)(2) "recognizes the possibility of awards of attorney's fees, and related non-taxable expenses.... This rule does not provide a rule of decision, however. Rather, it and the accompanying advisory committee comment recognize that there must be another source of authority for such an award." 50 F.3d 1204, 1224 (3rd Cir. 1995).[4]

### III. Analysis

Defendants' principal contention is that the facts underlying the amended complaint were completely fabricated. Specifically, they point to six assertions, central to the plaintiffs' case, as patently false: (1) John Crawford was an unsophisticated investor; (2) Crawford was promised a di-

---

4. In this case, the defendants "incorporate and rely on the grounds set forth in their motion for sanctions and their application for mandatory post-adjudication Rule 11 review pursuant to 15 U.S.C. § 78u–4, as well as their arguments ... for directed verdict...." (Defs.' Mot. for Attorneys' Fees and Related Nontaxable Costs Pursuant to Rule 54(d)(2).)

versified portfolio at Alex. Brown, in the form of an investment pyramid; (3) Crawford believed that his investments were diversified in accordance with the pyramid; (4) Crawford was never contacted by any manager at Alex. Brown to discuss his investment objectives; (5) Tobin controlled Crawford's accounts; (6) no one at Alex. Brown recommended that Crawford diversify his accounts. These fabricated assertions, perpetuated in oral arguments, motions, and "self-serving affidavits," were the only reasons plaintiffs survived the motions for partial summary judgment. Defendants further argue that any reasonable inquiry made by plaintiffs' counsel would have revealed that the core allegations had no evidentiary support; that the suit was not being presented for a proper purpose; and that the suit was being brought to harass the defendants in order to extort a settlement. *See* Fed.R.Civ.P. 11(b) and (c).

Defendants, however, have failed to demonstrate that plaintiffs' pleadings are so deficient as to warrant sanctions for violations of Rule 11(b). At most, defendants can prove that they had a different interpretation of the evidence than did the plaintiffs, and that ultimately the jury agreed with the defendants' interpretation. As indicated by the voluminous transcripts, both parties presented evidence at trial to support their respective interpretations. *See Richter v. Achs*, 174 F.R.D. 316, 319 (S.D.N.Y.1997) (denying defendant's request for sanctions on a 10b–5 claim that was dismissed on summary judgment because claims were not frivolous). The allegations in the complaint were supported by testimony from John Crawford, Tina Crawford, Mr. Crawford's business partner Tom Keefe, and plaintiffs' expert witnesses. Essentially, this case came down to a credibility determination between Tobin and the defendants' other witnesses, and the plaintiffs and their witnesses. The jury apparently found Tobin more credible than John Crawford and defendants' witnesses more credible than plaintiffs' witnesses. Such an outcome does not necessarily lead to the conclusion that the plaintiffs' complaint was founded on untruths or that defendants were entitled to a directed verdict. *See* Fed. R.Civ.P. 50(a) ("If ...there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may ... grant a motion for judgment as a matter of law against that party ...."); *see also Richmond Television Corp. v. United States*, 354 F.2d 410, 414 (4th Cir.1965) (standard for granting directed verdict is whether the evidence, viewed in the light most favorable to the party opposing the motion, presents a question upon which reasonable people could reach only one conclusion).[5] Regardless of whether plaintiffs' arguments were unconvincing to this court or to a jury, they were not frivolous and were sufficient to be submitted to the jury.

The court finds, therefore, that plaintiffs' pleadings in this case (1) had bases in fact and advanced nonfrivolous legal arguments; (2) were the product of extensive inquiry; and (3) were supported by proper motives. The plaintiffs' two complaints all contained detailed factual support for their allegations. To that end, plaintiffs' case survived motions to dismiss, motions for partial summary judgment, and motions for judgment as a matter of law, made during trial pursuant to Rule 50.[6] Regard-

---

5. *See supra* note 4.

6. Even claims that were dismissed from the case prior to the jury verdict do not qualify as frivolous. *See DeBartolo Group*, 186 F.3d at

166 (dismissed claims are not per se frivolous). In this case, none of the claims that were dismissed from the case were frivolous. For example, Count I, the RICO claim, was dismissed from the case, pursuant to Rule

less of the ultimate outcome of plaintiffs' case, plaintiffs were entitled to present their evidence and arguments to a jury. Rule 11 was not intended to penalize a party whose interpretation of the evidence is eventually proven wrong; the question is whether there was a reasonable basis for the interpretation initially, and in this case there was. Based on the evidence submitted by the parties at trial, and in the course of this protracted litigation, the court finds that plaintiffs' complaint was filed in good faith and was objectively reasonable.

Nor will sanctioning plaintiffs in this case further the purposes of the PLSRA. Mandatory sanctions for violations of Rule 11 are designed to deter abusive lawsuits and to compensate defendants who were forced to defend against such frivolous litigation. *See, e.g., de la Fuente v. DCI Telecom., Inc.,* 259 F.Supp.2d 250, 261–64 (S.D.N.Y.2003) (imposing sanctions on plaintiff's counsel whose argument that the complaint should not be dismissed pursuant to the statute of limitations was not warranted by law); *Wassel v. Samuel,* 1995 WL 5772 *2 (4th Cir.1995) (unpublished) (imposition of sanctions appropriate when plaintiff filed state lawsuit based on same transactions as earlier federal lawsuit which had been dismissed). The court is not unsympathetic to Tobin whose reputation and livelihood have no doubt been severely impacted by this lawsuit. The fact remains that plaintiffs here have not engaged in the type of "abusive litigation" the PLSRA seeks to prevent, but rather initiated this lawsuit for the purpose of correcting what they perceived to be redressable violations of the securities laws. These issues were ultimately submitted to a jury after a lengthy trial. Had the jury found plaintiffs and their witnesses more credible than defendants and their witnesses, the outcome of the case would have been different. This case and the pleadings therein were neither legally frivolous nor abusive nor unsupported by evidence.

### IV. Conclusion

The court **FINDS** that the plaintiffs' pleadings (1) had bases in fact and were supported by nonfrivolous legal arguments; (2) were the product of reasonable inquiry that easily meets Rule 11's reasonable and competent standard; and (3) were supported by proper motives. Defendants' motions for sanctions, attorneys' fees, and nontaxable expenses are therefore **DENIED**.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

---

12(b)(6), because the PSLRA bars securities claims from being the basis of a RICO charge. However, the law was unsettled at the time of the filing of the amended complaint and the court finds that plaintiffs had a good faith basis for making these arguments before the court.