William Michael **JACOBS,** et al.

v.

**VENALI, INC.,** et al.

**Civil Action No. CCB–08–1407.**

United States District Court,
D. Maryland.

Jan. 29, 2009.

---

Michael Craig Worsham, Law Office of Michael Craig Worsham, Forest Hill, MD, for Plaintiffs.

Thomas S. Hood, Hood and Scholnick PA, Towson, MD, Howard Robert Rubin, Sonnenschein Nath and Rosenthal LLP, Washington, DC, Blaine C. Kimrey, David R. Geerdes, Sonnenschein Nath and Rosenthal LLP, Chicago, IL, for Defendants.

## MEMORANDUM

CATHERINE C. BLAKE, District Judge.

Now pending before the court are two motions to dismiss for failure to state a claim upon which relief can be granted: one filed by defendants Venali, Inc. ("Venali"), VL.Net Technologies, Inc. ("VL.Net"), and Douglas O'Keefe; the other filed by defendants Judd Brazer, Pasquale Giordano, and Mariano Juncadella.[1] *See* Fed.R.Civ.P. 12(b)(6). These corporations and individuals are among a group of defendants (collectively "defendants") that have been sued by plaintiffs William Michael Jacobs and Martin Pasco ("plain-

---

1. Also pending are several motions to seal and a related motion to strike.

tiffs") for violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I) and the Maryland Telephone Consumer Protection Act ("Maryland TCPA"), Md.Code Ann., Com. Law § 14–3201–3202 (Counts II & III), negligence (Count IV), civil conspiracy (Count V), and aiding and abetting (Count VI). Also pending is a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, filed by defendants Brazer, Giordano, and Juncadella.[2] The issues in this case have been fully briefed and no hearing is necessary. For the reasons stated below, the defendants' motions to dismiss will be granted.

## BACKGROUND

From June 2002 through September 2005, plaintiffs William Jacobs and Martin Pasco, both Maryland residents, received over 700 unsolicited advertisements—at least 369 to Mr. Jacobs and 337 to Mr. Pasco—via their telephone facsimile ("fax") machines. On May 12, 2005, these plaintiffs and two others, through their attorney Michael Worsham, filed a complaint in the Circuit Court for Howard County, Maryland against Florida corporations Travelcomm Industries, Inc. ("Travelcomm") and Vision Lab Telecommunications, Inc. ("Vision Lab"), Pennsylvania corporation DigitalSpeed Communications, Inc., and Digital Speed's president Adam Pasternack, suing them for violations of the TCPA (Counts 1 & 2) and the Maryland TCPA (Counts 3 & 4) related to the receipt of 31 such unsolicited advertisements that they had received between June 2002 and the date the suit was filed. (Giordano Mot. to Dismiss at Ex. 2.) *See Jacobs, et al. v. Travelcomm Indust. Inc., et al.,* No. 13 C 05062043–DMS (Circuit Court Howard County, Md.2005) ("*Jacobs*

*I* "). Eventually Vision Lab agreed to settle *Jacobs I* and on Dec. 5 and 6, 2005, Jacobs, Pasco, and their two other co-plaintiffs joined Vision Lab in signing a Settlement Agreement, Release and Waiver ("settlement agreement"), one of the stated purposes of which was to "avoid the expense, inconvenience, and distraction of further litigation." (Giordano Mot. to Dismiss at Ex. 3, Settlement Agreement at 1.) The release clause of the settlement agreement reads as follows:

> *Full Release by Plaintiffs:* Upon dismissal of the Action and as consideration for settlement, Plaintiffs, on their own behalf and on behalf of any present or past parents, subsidiaries, predecessors, successors, assigns, partners, agents, affiliates of any kind, officers, directors, employees, attorneys, or any other persons acting on Plaintiffs' behalf, hereby release and forever discharge, jointly and severally, Vision Lab, its past and present parents, subsidiaries, predecessors, successors, assigns, partners, agents, affiliates of any kind, officers, directors, employees, attorneys, or any persons acting on Vision Lab's behalf, from any and all claims asserted or that could have been asserted in the Action, but this Agreement does not release or dismiss Plaintiffs' claims against any of the non-settling defendants in the Action (Travelcomm Industries, Inc., DigitalSpeed Communications, Inc., or Adam Pasternack).

(*Id.* ¶ 5.) *Jacobs I* was consequently dismissed with prejudice as to Vision Lab on February 22, 2006.[3] It was dismissed with prejudice as to the remaining defendants on August 4, 2006, apparently as the result of settlement. (*See* Md. Compl. ¶ 35.) Vision Lab later went out of business.

---

**2.** Consistent with Local Rule 105.8, no response has been filed to this motion.

**3.** Neither party argues that this release was the product of coercion or otherwise invalid.

On April 11, 2008, Mr. Jacobs and Mr. Pasco, represented by Mr. Worsham and his local counsel in Florida, Robert Murphy, filed a complaint in the Circuit Court for Broward County, Florida against several former officers, directors, and employees of the now-defunct Vision Lab, as well as two corporations known by the plaintiffs to have been affiliates of Vision Lab, namely Venali, a Florida corporation, and VL.Net, a Canadian corporation.[4] This complaint encompassed the over 700 unsolicited advertisements they received via fax between August 6, 2002 and September 13, 2005, and asserted resulting violations of the TCPA (Count I), violations of the Maryland TCPA (Count II), negligence (Count III), civil conspiracy (Count IV), and aiding and abetting (Count V). (Giordano Mot. to Dismiss at Ex. 5.) *See Jacobs, et al. v. Brazer, et al.*, No. CACE0801589 (Circuit Court, 17th Judicial District, Broward County, FL 2008) ("Florida suit"). Aside from the different named defendants, Counts I and II of this complaint are very similar to Counts 1 through 4 of the *Jacobs I* complaint. (*Compare* Giordano Mot. to Dismiss at Ex. 2, *Jacobs I* Compl. ¶¶ 39, 41, & 43–44 *with* Giordano Mot. to Dismiss at Ex. 5, Fl. Compl. ¶¶ 90, 91, & 93.) After being apprised by defense counsel of the *Jacobs I* settlement agreement (Giordano Mot. to Dismiss at Ex. 6), Mr. Murphy entered a notice of voluntary dismissal without prejudice on behalf of the plaintiffs on April 23, 2008. (Giordano Mot. to Dismiss at Ex. 7.)

The present suit (*"Jacobs II "*) was filed by the plaintiffs on May 30, 2008, again represented by Mr. Worsham. The suit names all of the same defendants named in the Florida suit and, like the Florida suit, it centers around the alleged receipt—between August 6, 2002 and September 13, 2005—of over 700 unsolicited advertisements via fax.[5] (*Compare* Giordano Mot. to Dismiss at Ex. 5, Fl. Compl. ¶¶ 22–23 *with* Md. Compl. ¶¶ 22–23.) Like both *Jacobs I* and the Florida suit, it charges the defendants with violations of the TCPA and the Maryland TCPA, and it contains the identical negligence, civil conspiracy, and aiding and abetting charges included in the Florida suit. (*Compare* Giordano Mot. to Dismiss at Ex. 5, Fl. Compl. ¶¶ 95–98, 100–102, & 104–08 *with* Md. Compl. ¶¶ 96–99, 100–102, & 103–107.)

Defendants assert that this suit should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it is barred by the release clause of the *Jacobs I* settlement agreement with Vision Lab ("Vision Lab release"), and moreover because its claims are barred by res judicata. I will address these issues in turn.

### ANALYSIS

#### A. Motion to Dismiss Under Rule 12(b)(6)

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the

---

**4.** In that complaint, as in the complaint in this case, plaintiffs alleged that Vision Lab used Venali and VL.Net "as support and/or cover for Vision Lab's illegal activities until Vision Lab finally closed down." (Giordano Mot. to Dismiss at Ex. 5, Fl. Compl. ¶ 26.) They also alleged that Venali owned VL.Net (*id.* ¶ 47), that Venali and Vision Lab shared a common owner and commingled assets (*id.* ¶ 54), and that Venali, Vision Lab, and VL.Net all shared office space for their unlawful fax transmission operations. (*Id.* ¶¶ 29 & 50.) In

a section of their complaint entitled "Attempts to Separate Vision Lab from Venali," plaintiffs described at length how these two corporations, while technically separate, were operated interchangeably. (*Id.* ¶¶ 51–57.)

**5.** Plaintiffs stress that these approximately 700 advertisements are separate from the 31 advertisements at issue in *Jacobs I*. (Pls.' Opp. at 6.)

merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir.2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999)) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal citations omitted). Thus the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir.2001) ("the presence [in a complaint] ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

### i. *Preclusive Effect of the Release*

■ The release in this case is governed by Maryland law. (*See* Giordano Mot. to Dismiss at Ex. 3, Settlement Agreement ¶ 8.) Under Maryland law, a general release—a release aimed at "all mankind"—bars all future claims against all other entities associated with the events that gave rise to a particular lawsuit. *Peters v. Butler,* 253 Md. 7, 251 A.2d 600, 602

(1969) (citing *Pemrock, Inc. v. Essco Co.,* 252 Md. 374, 249 A.2d 711 (1969)); *see Burns v. General Motors Corp.,* 950 F.Supp. 137, 139 (D.Md.1996) (applying this principle). General releases are to be distinguished from limited or special releases, which only release certain parties and/or certain claims from future litigation. *See Fed. Sav. & Loan Ins. Corp. v. Reeves,* 816 F.2d 130, 134 (4th Cir.1987); *Virginia Impression Prods. Co. v. SCM Corp.,* 448 F.2d 262, 265 (4th Cir.1971).

■ The Vision Lab release is not as broad in its wording as typical general releases. *See, e.g., Peters,* 251 A.2d at 601 (release clause worded to release defendant and "all other persons, firms or corporations liable or who might be claimed to be liable on account of all injuries, known and unknown which have resulted or may in the future develop from the accident") (internal quotations and alterations omitted); *Pemrock,* 249 A.2d at 712 (release clause worded to release defendant "and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever"). Nonetheless, it is self-described as a "full release," and as to Vision Lab and related parties it is quite broad, releasing "forever" Vision Lab's "subsidiaries, predecessors, successors, assigns, partners, agents, affiliates of any kind, officers, directors, employees, attorneys, or any person acting on Vision Lab's behalf from any and all claims asserted or that could have been asserted in the Action." (Giordano Mot. to Dismiss at Ex. 3, Settlement Agreement ¶ 5.) Accordingly, the Vision Lab release is best understood as a general release as it pertains to any and all entities associated with Vision Lab.[6] *See*

---

**6.** Indeed, by specifically naming those par- ties *not* released from potential liability—Tra-

*Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.,* 973 F.2d 349, 353 (4th Cir.1992). Because, according to plaintiffs' own complaint, every defendant named in the present suit was an officer, director, employee, affiliate, or agent of Vision Lab before the release was signed, *see* Md. Compl. ¶¶ 2–16, 25, 28–29, 33, 48, 51, & 55, plaintiffs' claims against these individuals and corporations are barred by the express terms of the release.[7] *Cf. White v. General Motors Corp.,* 541 F.Supp. 190, 194–95 (D.Md.1982) (finding a general release to bar all future claims against related parties not in the original litigation).

Plaintiffs argue that, because this suit involves approximately 700 unsolicited advertisements that are separate from the 31 faxes at the center of the *Jacobs I* action, and because at least some of these 700 advertisements were transmitted after *Jacobs I* was filed, it is a separate action involving claims that could not have been asserted in *Jacobs I,* and is therefore beyond the reach of the Vision Lab release. *See Auslander v. Helfand,* 988 F.Supp. 576, 580 (D.Md.1997) ("A general release

only extends to those claims within the parties' contemplation when the release is executed") (citing *Vincent v. Palmer,* 179 Md. 365, 19 A.2d 183 (1941)). This argument fails, however, for two reasons. First, plaintiffs knew about the existence of these 700 advertisements well before the time the release was negotiated; by their own accounting, they received these advertisements on or before September 13, 2005, and the release was signed on December 5 and 6, 2005. In their complaint in *Jacobs I* they even admit that they had received other similar unsolicited advertisements but had not included them in the suit. (*Jacobs I* Compl. ¶ 20.) Thus, the claims arising from many if not all of these approximately 700 advertisements could have been litigated in *Jacobs I.*[8]

Second, regardless whether some of the advertisements at issue here were transmitted after the release was signed or otherwise unknown at the time of settlement, all of the legal claims asserted in this complaint were or could have been contemplated at the time the release was executed, and therefore were or could have been asserted in *Jacobs I.*[9] *See Coakley &*

---

velcomm Industries, Inc., DigitalSpeed Communications, Inc., or Adam Pasternack—the Vision Lab release implies that all other relevant parties not named *were* released. *See* 17A Corpus Juris Secundum § 327 ("Under the maxim 'expressio unius est exclusio alterius,' the expression in a contract of things of a class implies the exclusion of all not expressed"); *cf. Smith Barney, Inc. v. Critical Health Sys. of N. Carolina, Inc. of Raleigh, N. Carolina,* 212 F.3d 858, 861 (4th Cir.2000).

7. Furthermore, plaintiffs' attorney knew the identities of at least five of these individual defendants long before the date the settlement agreement was finalized. Mr. Worsham filed a complaint against defendants Vision Lab, Pasquale Giordano, Judd Brazer, Amin El-Gazzar, Joseph Fisher, and Spencer Jones in the U.S. District Court for the District of Columbia on January 4, 2005. *See Adler v.*

*Vision Lab Telecomm., Inc.,* 393 F.Supp.2d 35 (D.D.C.2005).

8. Indeed, it would contravene public policy to read this release as binding plaintiffs not to sue on advertisements 1 through 31, but leaving them free to sue on advertisements 32 through 732. Such a reading would allow plaintiffs to sign a settlement agreement in the present suit, complete with a new release, and then file suit again based on a new set of as-yet-undisclosed advertisements they received.

9. This fact is made clear by *Adler,* a case filed in January of 2005, in which plaintiffs' attorney raised all the same claims raised here— many word-for-word—against several of the defendants named in this suit. (*Compare* Giordano Mot. to Dismiss at Ex. 1, *Adler* Compl. ¶¶ 47–48, 50, 55–58, 59–61, & 62–66 *with* Md. Compl. ¶¶ 91–92, 93, 96–99, 100–102, & 103–07.)

*Williams,* 973 F.2d at 353. The number, timestamp, or content of the advertisements at issue does not change the nature of the claims asserted; only the potential type and amount of relief. Moreover, even if the additional claims raised in this suit— specifically negligence, civil conspiracy, and aiding and abetting—were not contemplated at the time the *Jacobs I* release was executed, the function of the phrase "any and all claims" is to preclude their being raised now. *See Krazek v. Mountain River Tours, Inc.,* 884 F.2d 163, 165– 66 (4th Cir.1989) (finding a release barring future "claims and demands of every kind and nature whatsoever" to encompass a negligence claim not raised in the first action).

For all of the above reasons, plaintiffs' suit is barred by the Vision Lab release.

#### ii. Res Judicata

■■ Even if this court were to hold that the Vision Lab release does not preclude plaintiffs' claims, they are still precluded by the principle of res judicata, also known as claim preclusion. Res judicata operates to "bar[ ] a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161 (4th Cir.2008). Its purposes are both equitable and practical: to protect litigants from the burden of relitigating identical issues, and to "promote judicial economy by preventing needless litigation" *Id.* at 162 (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)) (internal alteration omitted). Because *Jacobs I* was a state court matter in Maryland, the preclusive effect of res judicata on the claims raised therein is determined by reference to Maryland law. *Id.*

■ In Maryland, for res judicata to apply, it must be shown: "(1) that the

parties in the present litigation are the same or in privity with the parties in the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) that there has been a final judgment on the merits." *Id.* (citing *Anne Arundel County Bd. of Educ. v. Norville,* 390 Md. 93, 887 A.2d 1029, 1037 (2005)). All three elements are met in this case.

■ Maryland courts have held that an employee in a new suit is in privity with his employer from a previous suit for purposes of res judicata, *deLeon v. Slear,* 328 Md. 569, 616 A.2d 380, 389 (1992), thus all of the individual defendants in this matter—former employees of Vision Lab—are in privity with defendant Vision Lab from *Jacobs I.* Maryland has also relaxed its privity requirements such that "a defendant not in privity with a defendant to the first suit may invoke the defense of res judicata" in cases where "where the plaintiff had a full and fair opportunity to litigate the same claim in the prior proceeding." *Id.* at 389 n. 5. Because plaintiffs had a full and fair opportunity to litigate the claims raised here in *Jacobs I,* as will be elaborated below, Venali and VL.Net meet the state's privity requirements as well.

■ The claims raised in a new action are barred by res judicata if they are "identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." *R & D 2001, LLC v. Rice,* 402 Md. 648, 938 A.2d 839, 848 (2008) (quoting *Norville,* 887 A.2d at 1037). This means that new and different claims might also be precluded by res judicata, so long as they involve substantially identical issues that were or could have been litigated already in the prior suit. *Ugast v. La Fontaine,* 189 Md. 227,

55 A.2d 705, 707 (1947); *see Patel v. HealthPlus, Inc.,* 112 Md.App. 251, 684 A.2d 904, 919 (Md.Ct.Spec.App.1996) (finding a new negligence claim to be barred by res judicata). Here, the TCPA and Maryland TCPA claims raised by plaintiffs are clearly identical and so barred by res judicata; the negligence, civil conspiracy, and aiding and abetting claims all center around alleged conduct already litigated in *Jacobs I.* The fact that these claims may arise out of different advertisements is immaterial; the roughly 700 advertisements at issue here are undoubtedly related to those at issue in *Jacobs I* for purposes of res judicata. *See Anyanwutaku v. Fleet Mortg. Group, Inc.,* 85 F.Supp.2d 566, 571 (D.Md.2000) (stating that claims may be identical for purposes of res judicata if their underlying facts "are related in time, space, origin, or motivation") (quoting Restatement (Second) of Judgments § 24(2) (1982)). Accordingly, the identity requirement of res judicata has been met in this case.

 It is well established that dismissals with prejudice—including those resulting from settlement agreements or consent decrees—are treated as final judgments on the merits for purposes of res judicata. *See Nash County Bd. of Ed. v. Biltmore Co.,* 640 F.2d 484, 487 (4th Cir. 1981) ("We have ... no difficulty in concluding ... that the consent judgment in the state court constituted, for res judicata purposes, a final judgment on the merits."); *Claibourne v. Willis,* 347 Md. 684, 702 A.2d 293, 297 (1997) ("At least one effect of the dismissal with prejudice is the same as a court entered final adjudication

of the merits."); *Montgomery County v. Revere Nat'l Corp., Inc.,* 341 Md. 366, 671 A.2d 1, 7 (1996) (affirming that an order of dismissal following a settlement agreement is a final judgment precluding further litigation). The settlement agreement and resulting orders of dismissal with prejudice in this case clearly constitute a final judgment on the merits, a fact that plaintiffs do not appear to contest. Because all three requirements of res judicata have therefore been met, plaintiffs' present claims are barred.

### CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss will be granted.[10] A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The defendants' motions to dismiss (docket entry nos. 24 & 26) are **GRANTED;**

2. All motions to seal (docket entry nos. 23, 25, 32, & 37) are **DENIED** except for the settlement agreement (Exhibit 2 of Venali, Inc., VL.Net Technologies, Inc., and Douglas O'Keefe's motion to dismiss, and Exhibit 3 of Brazer, Giordano, and Juncadella's motion to dismiss); those exhibits may remain sealed but the contents of the agreement are unsealed to the extent they are discussed in motions and in the court's opinion as necessary to explain the ruling;

---

10. With regard to defendants Brazer, Giordano, and Juncadella's motion for sanctions, this court is mindful that sanctions under Rule 11 and 28 U.S.C. § 1927 are to be imposed sparingly. *See Thomas v. Treasury Mgmt. Ass'n, Inc.,* 158 F.R.D. 364, 366 (D.Md. 1994); *Crawford v. Deutsche Bank AG,* 271

F.Supp.2d 829, 832 (E.D.Va.2003) (citing *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991)). On this understanding, and noting that plaintiffs had at least a colorable argument why claims against these defendants should not be barred, in the exercise of its discretion the court denies the motion.

3. The plaintiffs' motion to strike the motion by defendants Brazer, Giordano, and Juncadella to seal their reply (docket entry no. 40) is **DENIED** as moot;

4. The defendants' motion to stay discovery (docket entry no. 27) is **DENIED** as moot;

5. The plaintiffs' motion for extension of time (docket entry no. 36) is **DENIED** as moot;

6. The defendants' motion for sanctions (docket entry no. 35) is **DENIED;**

7. The case is **DISMISSED** with prejudice; and

8. The clerk shall **CLOSE** this case.