**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2146

EAST COAST REPAIR & FABRICATION, LLC,

      Plaintiff – Appellant,

    v.

UNITED STATES OF AMERICA, THROUGH THE DEPARTMENT OF THE
NAVY, and its activity, the Mid-Atlantic Regional Maintenance Center,

      Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at
Norfolk.  Arenda L. Wright Allen, District Judge.  (2:20-cv-00057-AWA-DEM)

Argued:  September 22, 2021                Decided:  October 14, 2021

Before MOTZ and AGEE, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by published opinion.   Judge Motz wrote the opinion, in which Judge Agee and
Senior Judge Keenan joined.

**ARGUED:**  Dustin Mitchell Paul, VANDEVENTER BLACK, LLP, Norfolk, Virginia,
for Appellant.   Michael Anthony DiLauro, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Brian M. Boynton, Acting
Assistant Attorney General, Civil Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

This case arises from a dispute between East Coast Repair and the United States over contracts for the repair of three Navy ships. East Coast seeks to recover $473,600 that the Government withheld from payment under one of these contracts. Because the parties' settlement agreement precludes East Coast's claims, we affirm the judgment of the district court rejecting these claims.

I.

East Coast, a ship repair company, contracted with the U.S. Navy to repair three ships: the *USS Thunderbolt*, the *USS Tempest*, and the *USS Hurricane*. Though East Coast brought this suit under the *Hurricane* contract, the *Tempest* contract is central to it. In 2013, the Navy claimed it was entitled to $474,600 in liquidated damages under the *Tempest* contract because East Coast delivered the *Tempest* late. Because the Navy had already paid all but $1,000 for East Coast's work on the *Tempest*, it withheld a $473,600 setoff from payment to East Coast under the *Hurricane* contract.

East Coast claimed the Navy caused the complained-of delay in delivery and sent a letter to the government contracting officer disputing the Navy's assessment of liquidated damages under the *Tempest* contract and requesting additional compensation for unanticipated work on the *Tempest*. In 2014, after the contracting officer denied that request, East Coast sued the United States under the *Tempest* contract in federal district court (the "*Tempest* suit"). In its complaint, East Coast referred specifically to the $473,600 setoff, stating that it "included those liquidated damages as part of its [request to

2

the government contracting officer] and as part of the calculation of the damages requested hereunder since they were assessed on the TEMPEST."

In 2014, while the litigation proceeded, East Coast submitted to the contracting officer a request for additional compensation under the *Hurricane* contract for its assertedly unexpected work on that ship. After six months without response, East Coast appealed to the Armed Services Board of Contract Appeals (the "Board") and ultimately moved for summary judgment before the Board seeking payment of the $473,600 "withheld from payments due under [the *Hurricane*] contract." For reasons unclear from the record, East Coast later withdrew the summary judgment motion.

East Coast and the Government settled the *Tempest* suit in 2017. In the settlement agreement, each party released the other from liability in broad, but not identical, terms. East Coast released the Government "from any and all actions, claims, . . . and liabilities of any type, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, or open or hidden, which have existed, presently exist, or may exist in the future, arising out of or in any way relating to the [*Tempest*] Contract." The Government released East Coast from "any and all" claims "arising out of or in any way relating to the issues that were raised in the pleadings or could have been raised in the pleadings." Both releases contain an exception for retainage (a portion of the contract price the Government typically withholds from payment to ensure contractors complete their work). The district court dismissed the *Tempest* suit with prejudice.

In 2019, East Coast asserted a right to the same $473,600 in a third request to the government contracting officer. And in 2020, East Coast filed this action, claiming the

Government's refusal to pay the $473,600 breached the *Hurricane* contract. After the parties filed cross motions for summary judgment, the district court granted the Government's motion and denied East Coast's. The court held that (1) it lacked subject matter jurisdiction because East Coast made a binding choice to raise the setoff issue before the Board, and (2) the settlement agreement barred East Coast's claims. East Coast then filed this appeal.

II.

We first address the district court's jurisdictional holding. We review a court's dismissal for lack of subject matter jurisdiction de novo. *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016).

The district court based its conclusion that it lacked subject matter jurisdiction on Section 7104(b) of the Contract Disputes Act, 41 U.S.C. §§ 7101, *et seq*. That provision states that a contractor "may" — after first raising a claim with the designated "contracting officer" — bring the claim before a federal district court "in lieu of" appealing to the agency board.[*] The Federal Circuit has interpreted Section 7104(b) to make binding a government contractor's choice to bring a claim before either the agency board or a federal district court. *See Nat'l Neighbors, Inc. v. United States*, 839 F.2d 1539, 1541–42 (Fed. Cir. 1988). Thus, once a contractor elects to bring its claim before one forum with jurisdiction, the other forum lacks subject matter jurisdiction over the same claim. *Bonneville Assocs. v.*

---

[*] A contractor usually must choose between an agency board and the U.S. Court of Federal Claims. But in maritime cases like this one, a contractor may choose a federal district court. *See* 41 U.S.C. § 7102(d); Suits in Admiralty Act, 46 U.S.C. § 30901, *et seq*.

4

*United States*, 43 F.3d 649, 653 (Fed. Cir. 1994). The Federal Circuit commonly refers to this rule as the "Election Doctrine." *Id.* at 651. Relying on this doctrine, the district court concluded that East Coast made a binding choice of forum when it filed a motion for summary judgment raising the setoff issue before the Board in 2016. For this reason, the court held it lacked jurisdiction.

We have some question as to this holding. The district court did not consider the significance of the *Tempest* suit. The Government asserted before the district court that East Coast had earlier chosen federal district court as its preferred forum when it filed a complaint raising the setoff issue in the *Tempest* suit in 2014. If so, the filing of a summary judgment motion raising the same issue before the Board two years later would not constitute a binding election of forum. *Id.* at 653. Nor is it at all clear that the mere filing of a summary judgment motion constitutes a binding choice of forum under the governing statute, which states that a contractor may either "*appeal*[] the decision of a contracting officer . . . to an agency board" or "*bring an action directly*" in federal court. 41 U.S.C. § 7104(b) (emphasis added).

Rather than determine the answer to these difficult jurisdictional questions — questions that turn on principles never before applied in this Circuit — we take the "less burdensome course" and resolve this case on res judicata grounds. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007). Where a court conclusively determines it lacks jurisdiction, it must dismiss the case on that basis. *Sinochem Int'l Co.*, 549 U.S. at 434. But a court may bypass a difficult jurisdictional question and "choose among threshold grounds for denying audience to a case on the merits . . . when

5

considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 431–32; *Hicks v. Ferreyra*, 965 F.3d 302, 309 n.2 (4th Cir. 2020). Res judicata is one such threshold ground. *See Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 277 (3d Cir. 2016).

III.

Accordingly, we now turn to the district court's grant of summary judgment on the basis that res judicata bars East Coast's claims because East Coast released them in the 2017 settlement agreement. We review summary judgment decisions de novo. *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 218 (4th Cir. 2018). Summary judgment is appropriate if, construing all evidence in favor of the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Res judicata traditionally bars a party from asserting a claim in a later suit once a court has reached a final judgment on the merits of the same claim in an earlier suit. *Martin v. Am. Bancorp. Ret. Plan*, 407 F.3d 643, 650 (4th Cir. 2005). If a claim is resolved in a settlement agreement, we look to the intent of the parties to determine whether the settlement agreement bars later claims. *Ohio Valley Envt'l Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 211 (4th Cir. 2009) (citing 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4443 (2d ed. 2002)). We use contract interpretation principles to discern the parties' intent. *Keith v. Aldridge*, 900 F.2d 736, 740–41 (4th Cir. 1990).

Here, East Coast released the Government from liability for "any and all" claims "arising out of or in any way relating to the [*Tempest*] Contract." The $473,600 setoff

clearly "relates" to the *Tempest* contract because the Navy withheld that amount as liquidated damages on the *Tempest* contract. We cannot read such a broad release to exclude a claim for a setoff taken as liquidated damages under the *Tempest* contract. *Cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning . . . ."); *Am. Recovery Corp. v. Comput. Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (describing "arising out of or related to" formulation in an arbitration clause as "capable of an expansive reach"). And if we had any doubt as to whether East Coast believed the setoff relates "in any way" to the *Tempest* contract, we need only look to East Coast's complaint in the *Tempest* suit, which states that East Coast factored the $473,600 into its calculation of damages because the damages "were assessed on the TEMPEST."

East Coast insists, however, that we read its release to give meaning to the difference in wording between its release and the Government's. East Coast regards it as significant here that while it released any claims against the Government "arising out of or in any way relating to the [*Tempest*] Contract," the Government released any claims against East Coast "arising out of or in any way relating to issues that were raised in the pleadings or could have been raised in the pleadings" in the *Tempest* action. East Coast argues we must construe this difference to mean that "the parties intentionally omitted" a release of a claim for the setoff. Appellant's Br. at 25. But as it conceded at oral argument before us, East Coast offers no evidence of the parties' intent to do this in drafting the two releases. The difference in the language of the two releases alone does not require us to accept this "strained interpretation" of the text. *See Goodman v. Resolution Tr. Corp.*, 7 F.3d 1123,

7

1126–27 (4th Cir. 1993). And when a settlement agreement's text is unambiguous, as it is here, we simply cannot rewrite its terms based on a party's protestation that it meant something other than what it said.

The absence of any reservation in the settlement agreement for the setoff further supports the conclusion that the settlement agreement bars East Coast's claims. *See Coakley & Williams Constr., Inc. v. Structural Concrete Equip.*, 973 F.2d 349, 353 (4th Cir. 1992) ("[B]ecause [a] release was very broadly phrased, it seems that if the parties intended to allow any future claims against each other, they would have done so specifically."). As the district court noted, the parties specifically included an exception in the settlement agreement for retainage and could have done the same for the setoff. Accordingly, we agree with the district court that the settlement agreement bars East Coast's claims.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

8