**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-2001**

WESTERN WORLD INSURANCE GROUP,

Claimant - Appellee,

and

GUIDEONE NATIONAL INSURANCE COMPANY,

Plaintiff,

v.

CHURCH MUTUAL INSURANCE COMPANY,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Margaret B. Seymour, Senior District Judge. (2:17-cv-01361-MBS)

Argued: October 28, 2021                                    Decided: January 25, 2022

Before DIAZ and THACKER, Circuit Judges, and Thomas T. CULLEN, United States District Judge for the Western District of Virginia, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Ainsley Fisher Tillman, Ian Scott Ford, FORD WALLACE THOMSON LLC, Charleston, South Carolina, for Appellant. Bradish Johnson Waring, Kenyatta Laffette

Gardner, BUTLER SNOW LLP, Charleston, South Carolina, for Appellee. **ON BRIEF:** Stephen P. Groves, Sr., BUTLER SNOW LLP, Charleston, South Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Abundant Faith Lighthouse of Jesus Christ, Inc. ("Abundant Faith") purchased a church building in Conway, South Carolina ("the Property") from the Refuge at FPHC ("the Refuge"), another local church. To make the purchase, Abundant Faith took out a mortgage with the Refuge as the mortgagee. Pursuant to the mortgage agreement, Abundant Faith was required to maintain property insurance and assign the proceeds of any payment received from the insurance policy to the Refuge.

When Abundant Faith's insurance on the Property lapsed, the Refuge, as the mortgagee, obtained an insurance policy from Western World Insurance Group ("Western World"). In an effort to avoid foreclosure, Abundant Faith also ultimately procured insurance for the Property. First, Abundant Faith purchased a policy from GuideOne National Insurance Company ("GuideOne") that listed the Refuge as the mortgagee of the Property. Church Mutual Insurance Company ("Church Mutual") also issued a policy to Abundant Faith, but no mortgagee was listed on the Church Mutual policy.

On July 24, 2016, a fire destroyed the Property. Shortly thereafter, the insurance companies began determining what they were required to pay and to whom. In exchange for Western World paying the totality of the claim, the Refuge assigned its mortgage interest in the Property to Western World. Western World then contacted GuideOne and Church Mutual seeking payment for their share of the loss.

Eventually, GuideOne brought a declaratory judgment action in federal court against both Western World and Church Mutual to clarify how the insurance proceeds should be distributed. Western World, in turn, raised crossclaims and counterclaims

3

against GuideOne and Church Mutual. But before a final decision was made below, GuideOne and Western World settled, with GuideOne agreeing to pay its pro-rata share of the loss to Western World. After the settlement between Western World and GuideOne, only Western World's claims against Church Mutual remained in the action before the district court. Western World sought to recoup its share of the loss from Church Mutual through an equitable lien.

The district court concluded that Western World possessed an equitable lien on the proceeds from the Church Mutual policy. Accordingly, it ordered Church Mutual to pay Western World pursuant to the equitable lien. But because the district court did not consider any possible defenses Church Mutual may have had before ordering such payment, we vacate and remand for further proceedings.

I.

A.

The Insurance Policies

From 2012 to 2014, the Refuge leased the Property to Abundant Faith. Then, on March 13, 2014, Abundant Faith purchased the Property from the Refuge through a mortgage agreement with the Refuge listed as the mortgagee. The mortgage agreement included a clause that required Abundant Faith, as the mortgagor, to:

> keep [the Property] insured from loss or damage in the maximum insurable value and assign the policy of insurance to the said Mortgagee, and in case the Mortgagor shall at any time neglect or fail to maintain such insurance, the Mortgagee may cause the same to be insured in his or its own name, and reimburse himself or itself for the premium and expenses of such insurance under this mortgage.

J.A. 26.[1]

However, Abundant Faith failed to maintain insurance on the Property. In 2016, Abundant Faith's policy with Stillwater Insurance Company expired, and it did not renew the policy or procure new insurance. In response to this lapse, the Refuge purchased $500,000 of insurance coverage from Western World to protect its interest in the Property. The Refuge also informed Abundant Faith that it intended to begin foreclosure proceedings due to Abundant Faith's nonpayment of the mortgage and failure to maintain insurance pursuant to the mortgage agreement.

To avoid foreclosure, Abundant Faith contacted GuideOne and Church Mutual to purchase insurance for the Property. Abundant Faith purchased a $1,500,000 policy from GuideOne on June 22, 2016. The Refuge was listed on the GuideOne policy as Abundant Faith's mortgagee. GuideOne does not dispute, nor has it ever disputed, the existence of this policy. Abundant Faith made payments on the GuideOne policy, and both parties behaved as though they were in an insurer-insured relationship.

On July 6, 2016, Church Mutual also issued a $795,000 insurance policy for the Property to Abundant Faith. But Abundant Faith claimed that it did not intend to purchase a policy from Church Mutual and attempted to stop the policy from being issued. Therefore, Abundant Faith made no payments on the Church Mutual policy. In response to Abundant Faith's attempt to disclaim the policy, Church Mutual advised Abundant Faith

---

[1] Citations to the J.A. refer to the Joint Appendix filed by the parties in this appeal.

that it was bound to purchase the policy because Church Mutual had already begun the underwriting process. Despite not making any premium payments on the Church Mutual policy, Abundant Faith took no affirmative steps to cancel it.

When applying for the Church Mutual policy, it is unclear whether Abundant Faith represented that there were no mortgages on the Property. In any event, no mortgagee was listed on the policy. As such, at least on the face of the policy, Church Mutual was unaware of the Refuge's interest in the Property when it entered into the insurance contract with Abundant Faith.

Just weeks after these insurance policies were purchased, on July 24, 2016, the Property was destroyed in a fire. An investigation of the origin of the fire indicated that it was set intentionally. Shortly after the fire, Abundant Faith's pastor was arrested for arson, but those charges were later dismissed, and the cause of the fire has never been fully litigated.

B.

Insurance Claims

On July 27, 2016, Abundant Faith informed Church Mutual that it did not intend to make a claim on the Church Mutual policy because it had other insurance, namely the GuideOne policy. Consistent with this representation, Abundant Faith filed a claim only on the GuideOne policy. Church Mutual nonetheless acted as though Abundant Faith had made a claim on the Church Mutual policy and began investigating the fire. For its part, the Refuge, which at this point was aware of the Church Mutual policy, asked Church Mutual to add the Refuge to the policy as the mortgagee, but Church Mutual did not do so.

6

On August 19, 2016, Western World contacted Church Mutual and GuideOne and asserted that its policy was excess to theirs. Therefore, according to Western World, Church Mutual and GuideOne owed the Refuge compensation on a pro-rata basis because their policies contained clauses entitling the mortgagee of the Property -- *i.e.* The Refuge -- to any insurance proceeds in the event of a loss. Thus, Western World made formal claims with GuideOne and Church Mutual for payment via the mortgagee clauses. Neither company paid the Refuge or Western World. As a result, on October 24, 2016, Western World paid the Refuge the entire sum of the Refuge's interest in the Property, $282,968.36. In turn, the Refuge assigned its mortgage interest in the Property to Western World.

Ultimately, on November 22, 2016, Church Mutual canceled its policy with Abundant Faith due to nonpayment of premiums and sent Abundant Faith a letter claiming the policy was "voided from its inception." J.A. 132. Church Mutual also informed Abundant Faith that it would not conduct any further investigation into the loss.

In February 2017, GuideOne denied payment on Abundant Faith's policy because Abundant was not "actually operating as a church" and had made allegedly fraudulent statements to GuideOne regarding the church's operations, the Church Mutual policy, and the cause of the loss. J.A. 135-6.

At that point, only Western World had compensated the Refuge for the loss of the Property.

7

C.

Procedural History

On May 25, 2017, GuideOne filed a declaratory judgment action in federal district court seeking a declaration that the GuideOne policy was excess insurance to the other policies and that it had no obligation to pay the Refuge because the Church Mutual and Western World policies provided sufficient primary coverage for the loss of the Property. In response, Church Mutual argued that it offered no coverage because the Refuge was not listed as a mortgagee on the Church Mutual policy, and further that its policy was void from its inception and not enforceable. Church Mutual also stated it was reserving defenses deriving from the policy itself, most notably the criminal-acts exclusion.

For its part, Western World filed counterclaims and crossclaims seeking reimbursement from both GuideOne and Church Mutual for their pro-rata shares of the loss. Western World also brought a bad faith claim against GuideOne, asserting that GuideOne had unreasonably delayed making decisions on Western World's claim, failed to evaluate the claim, relied on illegal policy provisions, and took other actions which Western World claimed were unjustifiable. GuideOne sought summary judgment on Western World's bad faith claim, arguing that it was justified in delaying its decision until authorities could conclude their investigation into the fire and that there were reasonable grounds for contesting Western World's claims.

After considering competing motions for summary judgment from each party, the district court issued an order holding: (1) the GuideOne policy was not excess insurance to Western World's policy; (2) the Church Mutual policy was enforceable; (3) Western

World's policy was excess to the GuideOne and Church Mutual policies; (4) Western World possessed an equitable lien on the Church Mutual policy; and (5) GuideOne was not entitled to judgment as a matter of law on Western World's bad faith claim asserted against it. Pursuant to this order, the district court directed GuideOne to pay Western World $183,942.43 and Church Mutual to pay Western World $99,045.93 given the equitable lien Western World possessed on the proceeds from the Church Mutual policy. Significantly, however, Church Mutual was not afforded the opportunity to raise any potential defenses before the district court ordered payment pursuant to the equitable lien.

On January 22, 2020, the parties informed the district court of a settlement agreement between GuideOne and Western World. Pursuant to the settlement agreement, Western World assigned its mortgage interest in the Property to GuideOne. In turn, GuideOne paid its pro-rata share of the loss to Western World. But Western World specifically reserved its right to recover insurance proceeds from Church Mutual.

Church Mutual then filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure seeking to set aside the equitable lien. Church Mutual argued that the settlement agreement between GuideOne and Western World extinguished Western World's interest in the Property as a mortgagee, and, therefore, Western World could not hold an equitable lien on the Church Mutual policy proceeds. The district court denied the Rule 59(e) motion because Western World specifically reserved the right to recover on the equitable lien from Church Mutual when it assigned its mortgage interest to GuideOne in the settlement agreement. In this order, the district court also formally dismissed the claims between Western World and GuideOne.

9

Church Mutual timely appealed.  In this appeal, Church Mutual challenges the district court's imposition of the equitable lien without giving it an opportunity to raise defenses to payment as well as the determination that the Western World policy was excess to the Church Mutual policy.

## II.

We review the district court's grant of summary judgment de novo.  *East Coast Repair & Fabrication, LLC v. United States ex rel. Dep't of the Navy*, 16 F.4th 87, 90 (4th Cir. 2021).  Summary judgment is appropriate if, construing the evidence in favor of the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Id.*  Federal jurisdiction in this case is premised on diversity, so the district court applied South Carolina substantive law.  *See Eshelman v. Puma Biotech. Inc.*, 2 F.4th 276, 281 (4th Cir. 2021).  We review the district court's analysis of state law de novo.  *See Sky Cable, LLC v. DirecTV, Inc.*, 886 F.3d 375, 385 (4th Cir. 2018).

## III.

## A.

<u>Western World Holds an Equitable Lien on the Proceeds from the Church Mutual Policy</u>

## 1.

South Carolina law provides, "if the mortgagor is bound by the mortgage to insure the mortgaged property, the mortgagee has an equitable lien on the insurance proceeds." *Knapp v. Victory Corp.*, 302 S.E.2d 330, 331 (S.C. 1983).  The concept of an equitable lien originates from the maxim "equity regards as done what ought to be done," which applies in cases where the party seeking equitable relief establishes "a clear obligation based upon

a valuable consideration that another do some act which he has failed to perform." *Regions Bank v. Wingard Properties, Inc.*, 715 S.E.2d 348, 354 (S.C. Ct. App. 2011).

Here, "what ought to be done" can be found in the mortgage agreement between the Refuge and Abundant Faith which obligates Abundant Faith to (1) maintain insurance on the Property; and (2) assign the proceeds from any payment from that insurance to the Refuge as the mortgagee. It is clear from the record that Abundant Faith failed to fulfill either obligation. Indeed, there was a period of time during which Abundant Faith failed to maintain any insurance at all. And when it did obtain insurance, Abundant Faith failed to list the Refuge as the mortgagee on the Church Mutual policy.[2]

2.

At its core, Church Mutual's argument against the equitable lien is that its insurance contract with Abundant Faith is not covered by the policy-proceeds assignment clause of the mortgage agreement. Church Mutual claims that because the proceeds assignment clause is satisfied by other insurance policies, and there was no mortgagee listed on its policy, it is not bound to pay the Refuge or its assignees as the mortgagee. In short, Church Mutual asserts that any policy-proceeds assignment issue is of no moment because the GuideOne and Western World insurance policies can cover the Refuge's loss.

---

[2] Church Mutual asserts there is no policy. However, Church Mutual's own actions, such as (1) referring to Abundant Faith's "claim" related to the fire and (2) telling Abundant Faith that it had a policy, demonstrate that Church Mutual and Abundant Faith were, in fact, in an insurer-insured relationship.

Taken to its logical end, Church Mutual's argument would allow insurance companies to avoid paying mortgagees if the mortgagee is not listed on the policy and another insurance company provides coverage. But this flies in the face of well-established South Carolina law regarding equitable liens, which ensures that the interests of mortgagees are protected. *See Knapp* 302 S.E.2d at 331 (holding that where a party is contractually bound to assign its insurance proceeds to its mortgagee, the mortgagee always possesses an equitable lien in the policy proceeds). Therefore, Church Mutual's arguments are unavailing.

Abundant Faith, as the mortgagor, had an obligation set forth in the mortgage agreement to maintain insurance on the Property and to assign the insurance proceeds to the Refuge as the mortgagee, in the event of a covered loss. The Refuge then assigned its mortgage interest to Western World in exchange for Western World paying the Refuge for the loss of the Property. At this point, Western World became entitled to any insurance proceeds from any policy that Abundant Faith held. In turn, when Western World settled with GuideOne, Western World relinquished its mortgagee interest in the Property to GuideOne. However, because Western World expressly reserved the right to be considered the mortgagee for the purpose of collecting the Church Mutual policy proceeds, Western World maintains its mortgagee status in that regard. Therefore, the district court correctly determined that Western World is the rightful holder of the equitable lien.

3.

Church Mutual further attempts to avoid the equitable lien by arguing that the district court should not have invoked equity at all because the legal remedies in the case

12

were adequate. To support this argument, Church Mutual relies on the equitable maxim that "equity supplement[s] the law and does not displace it." *Wigfall v. Tideland Utilities Inc.*, 580 S.E.2d 100, 108 (S.C. 2003). Church Mutual argues that because Abundant Faith obtained a policy from GuideOne which was sufficient to cover the Refuge's loss, the mortgagee's interest is fully covered contractually and, therefore, equity has no place here.

However, this argument misapprehends the issue. It is true that if there is a complete legal remedy in a case, courts should not apply an equitable remedy. *See Wigfall* 580 S.E.2d at 108. In this case, though, equity is necessary in order to provide a complete remedy to the parties. Critically, what matters in this case is that the Refuge, and later its assignee, Western World, are ultimately paid the proper amount from each party -- a result that can only occur by imposing an equitable lien. The amount of the loss to the Refuge was $282,968.36. Western World paid this entire sum to the Refuge. But because the district court held the Western World policy was excess insurance, Western World was not obligated to pay the Refuge anything.[3] Accordingly, the district court ordered GuideOne to pay Western World $183,942.43 and Church Mutual to pay Western World $99,045.93.[4]

---

[3] Church Mutual also challenges the finding that the Western World policy was excess insurance. We find no merit in this argument because the Western World and Church Mutual insurance policies protect different interests, with Western World's protecting the mortgagee's interest, and Church Mutual's the mortgagor's interest. The only "insured" seeking to collect in this case is the Refuge, and later its assignee Western World, and the only excess insurance clause that protects the interest of the insured is the one in the Western World policy. Therefore, the district court did not err in holding that the Western World policy was excess to the Church Mutual policy.

[4] These sums total $20 more than Western World paid the Refuge for the loss. The district court did not provide a reason for this discrepancy.

No mortgagee is named in the Church Mutual policy, and literally speaking, because the Refuge obtained the total amount owed to it via the Western World settlement, it would be simple to view the loss as settled. But when Western World became the mortgagee, it found itself in the unenviable position of covering a loss that the district court determined it did not owe. And given that no mortgagees appear in the Church Mutual policy, Western World cannot seek contractual reimbursement from Church Mutual via the policy. Therefore, Western World is left with only equitable remedies.

As noted above, an equitable lien exists to ensure that the mortgagee's interests are protected even if the original policy holder fails to include the mortgagee on its insurance policy. That is precisely the case here. As a result, we hold that Western World holds an equitable lien in the Church Mutual insurance policy proceeds.

B.

Church Mutual's Potential Defenses, If Any, Must Be Considered

Granting insurance proceeds to a party through an equitable lien involves a three-step process. First, the court must determine whether an equitable lien applies. *See Farmers & Merch. Nat'l Bank of Lake City v. Moore*, 133 S.E. 913, 918 (S.C. 1926). Second, the court must determine the extent of the equitable relief available, if any, considering the defenses the insurer would have against the original insured. *See Rosemond v. Campbell*, 343 S.E.2d 641, 645 (S.C. Ct. App. 1986); *Farmers & Merch. Nat'l Bank*, 133 S.E. at 918. Finally, the court orders relief. The district court erred in this case by conducting only steps one and three of this process and failing to consider step two.

14

In determining how much relief to provide on an equitable lien, the court must first determine whether contractual language limits the amount of insurance proceeds available to the mortgagee. *See Knapp*, 302 S.E.2d at 331. Absent such a limitation between the parties, the mortgagee is generally entitled to receive the full amount of proceeds secured by the policy. *See id.* In situations where the mortgage agreement or another instrument limits the amount of insurance proceeds available to the mortgagee, however, relief is capped at that amount. *See id.* For example, in *Knapp*, the mortgage agreement stated that the property was to be insured up to $160,000. *Id.* The South Carolina Supreme Court held that this limitation restricted the amount to which the mortgagee was entitled through an equitable lien. *See id.* Therefore, the maximum amount available through an equitable lien is either set through a limitation in the mortgage agreement or is the entire amount of the insurance proceeds.

Unlike the contract in *Knapp*, the mortgage agreement here does not limit the amount that the mortgagee is entitled to collect. In the case at hand, the mortgage agreement entitles the mortgagee to the entire amount of the insurance proceeds. This is because the mortgage agreement contains a simple assignment of all rights to proceeds by Abundant Faith to the mortgagee stating: "keep [the Property] insured from loss or damage in the maximum insurable value and assign the policy of insurance to the said Mortgagee" J.A. 26. Thus, any proceeds derived from an insurance policy held by Abundant Faith belong to the mortgagee. Still, that does not end the analysis.

Pursuant to South Carolina law, an assignee enjoys the same rights as the assignor. *See Rosemond*, 343 S.E.2d at 645. As a result, "the assignee of a debt takes the obligation

15

subject to all claims and defenses the obligor may have against the assignor." *Id*. In other words, the assignee steps into the shoes of the assignor, and the assignee's right to proceeds rises or falls with the assignor's rights. *See Farmers & Merch. Nat'l Bank*, 133 S.E. at 918 (holding that in the insurance context, a party may only collect proceeds as if it were the party originally entitled to the proceeds).

This means that Western World, acting as the assignee of the Church Mutual policy proceeds can only collect the Church Mutual policy proceeds to the extent that Abundant Faith could collect those proceeds itself. Further, Western World's right to proceeds is subject to all defenses Church Mutual could raise to deny coverage to Abundant Faith. Therefore, to determine the amount of proceeds, if any, to which Western World is entitled through the equitable lien, the district court was required to first consider any possible defenses Church Mutual could have raised against Abundant Faith.

Church Mutual preserved several defenses to paying the claim, including the criminal-acts exclusion in the policy, lack of meeting of the minds to create a valid insurance contract, lack of consideration, and mistake. Nonetheless, the district court held that the Church Mutual policy was enforceable, and in turn rejected the latter three defenses. Specifically, the district court held that the parties reached a meeting of the minds because Church Mutual "inform[ed] Abundant Faith it had pushed the button," that is, begun the underwriting process, that no consideration was required because "the facts support a finding that Church mutual waived payment of a premium," and that there was "no evidence that Abundant Faith induced any mistake on the part of Church Mutual." J.A. 557. However, the district court did not analyze whether Church Mutual had any legitimate

16

defenses to paying the policy beyond enforceability, most notably the arson defense, i.e., the criminal-acts exclusion.  We conclude this was error.

## IV.

The district court properly invoked an equitable lien in this case.  However, it did not afford Church Mutual the opportunity to raise all defenses it could have raised against Abundant Faith before ordering payment pursuant to the equitable lien.  This was error. Therefore, we vacate the judgment and remand to the district court for further proceedings.

*VACATED AND REMANDED*